4/17/2017 3:30:05 PM
Chris Daniel - District Clerk Harris County
Envelope No. 16493408
By: Jelilat Adesiyan
Filed: 4/17/2017 3:30:05 PM

## CAUSE NO._____

| | | |
|---|---|---|
| **CARLOS DURHAM AND DEBORAH DURHAM,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ALLSTATE VEHICLE & PROPERTY** | § | |
| **INSURANCE COMPANY,** | § | |
| **CHRISTOPHER JANOPOLIS, JOHN** | § | |
| **BUCKWALTER AND JOSEPH** | § | |
| **GRIFFITH,** | § | |
| *Defendants.* | § | **\_\_\_\_ JUDICIAL DISTRICT** |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Carlos Durham and Deborah Durham ("Plaintiffs"), and file this *Plaintiffs' Original Petition*, complaining of Allstate Vehicle & Property Insurance Company, Christopher Janopolis, John Buckwalter and Joseph Griffith (whom will be collectively referred to as "Defendants"), and for cause of action, Plaintiffs would respectfully show this Honorable Court the following:

### DISCOVERY CONTROL PLAN

1.     Plaintiffs intend for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery. Therefore, Plaintiffs will ask the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.

**EXHIBIT**

**2**

## PARTIES

2.  Plaintiffs Carlos Durham and Deborah Durham are individuals residing in Harris County, Texas.

3.  Defendant Allstate Vehicle & Property Insurance Company is an insurance company engaging in the business of insurance in the State of Texas. This defendant may be served with process by certified mail, return receipt requested, by serving its Attorney for Service: CT Corporation, 1999 Bryan St., Suite 900, Dallas, TX 75201-3136.

4.  Defendant Christopher Janopolis is an individual residing in and domiciled in the State of North Carolina. This defendant may be served with personal process by a process server at his place of residence at 5319 LAKE WILSON RD, ELM CITY, NC 27822-8358.

5.  Defendant John Buckwalter is an individual residing in and domiciled in the State of Texas. This defendant may be served with personal process by a process server at his place of residence at 2300 BROADMOOR DRIVE, APT 50, BRYAN, TX 77802-2638.

6.  Defendant Joseph Griffiths is an individual residing in and domiciled in the State of Florida. This defendant may be served with personal process by a process server at his place of residence at 720 SPRING LAKE DRIVE, DESTIN FL 32541-1967.

## JURISDICTION

7.  The Court has jurisdiction over this cause of action because the amount in controversy is within the jurisdictional limits of the Court. Plaintiffs are seeking monetary relief over $200,000 but not more than $1,000,000. Plaintiffs reserve the right to amend their petition during and/or after the discovery process.

8.  The Court has jurisdiction over Defendant Allstate Vehicle & Property Insurance Company because this defendant is a domestic insurance company that engages in the business of

insurance in the State of Texas, and Plaintiffs' causes of action arise out of this defendant's business activities in the State of Texas.

9.    The Court has jurisdiction over Defendant Christopher Janopolis because this defendant engages in the business of adjusting insurance claims in the State of Texas, and Plaintiffs' causes of action arise out of this defendant's business activities in the State of Texas.

10.    The Court has jurisdiction over Defendant John Buckwalter because this defendant engages in the business of adjusting insurance claims in the State of Texas, and Plaintiffs' causes of action arise out of this defendant's business activities in the State of Texas.

11.    The Court has jurisdiction over Defendant Joseph Griffiths because this defendant engages in the business of adjusting insurance claims in the State of Texas, and Plaintiffs' causes of action arise out of this defendant's business activities in the State of Texas.

**VENUE**

12.    Venue is proper in Harris County, Texas, because the insured property is situated in Harris County, Texas. TEX. CIV. PRAC. & REM. CODE §15.032.

**FACTS**

13.    Plaintiffs are the owners of a Texas Homeowners' Insurance Policy (hereinafter referred to as "the Policy"), which was issued by Allstate Vehicle & Property Insurance Company (herein referred to as "Allstate").

14.    Plaintiffs own the insured property, which is specifically located at 24703 Kennington Way, Spring, TX 77389, in Harris County (hereinafter referred to as "the Property").

15.    Allstate sold the Policy insuring the Property to Plaintiffs.

16.    On or about April 19, 2015, a hail storm and/or windstorm struck Harris County, Texas, causing severe damage to homes and businesses throughout the region, including

Plaintiffs' residence. Plaintiffs' roof sustained extensive hail and/or wind damage during the storm. Plaintiffs' home also sustained structural and/or exterior damage during the storm, including but not limited to, windows and window screens as well as to the gutters and downspout. After the storm, Plaintiffs filed a claim with their insurance company, Allstate, for the damage to their home caused by the hail storm and/or windstorm.

17.     Plaintiffs submitted a claim to Allstate against the Policy for Roof Damage, Structural Damage, and Wind Damage the Property sustained as a result of the hail storm and/or windstorm.

18.     Plaintiffs asked that Allstate cover the cost of repairs to the Property pursuant to the Policy.

19.     Defendant Allstate then assigned Defendant Christopher Janopolis (hereinafter referred to as "Janopolis") as the individual adjuster. Defendant Janopolis was accompanied on the inspection of Plaintiff's damages by independent roofing contractor Matt Satter. During the inspection of Plaintiffs' property, Defendant Janopolis told Matt Satter that he had "approved too many roofs for Allstate and that we wouldn't approve this roof for replacement." Defendant Janopolis conducted substandard inspections of Plaintiffs' Property. This is evident in the report which failed to include all of the damages. Moreover, the damages that he did include were severely undervalued.

20.     Plaintiffs informed Allstate that they disagreed with the estimate by Defendant Janopolis and provided Allstate with three roof damage estimates, far in excess of Defendant Janopolis' estimate. Plaintiffs' requested a second inspection.

21.     Defendant Allstate then assigned Defendant John Buckwalter (hereinafter referred to as "Buckwalter") as the adjuster. Defendant Buckwalter conducted substandard inspections

of Plaintiffs' Property. This is evident in the report which failed to include all of the damages and the damages that he did include were severely undervalued.

22.    Once again, Plaintiffs informed Allstate that they disagreed with the estimate by Defendant Buckwalter. Plaintiffs' requested a third inspection.

23.    Defendant Allstate then assigned Defendant Joseph Griffiths (hereinafter referred to as "Griffiths") as the adjuster. Defendant Griffith also conducted substandard inspections of Plaintiffs' Property. This is evident in the report which failed to include all of the damages and the damages that he did include were severely undervalued.

24.    Once again, Plaintiffs informed Allstate that they disagreed with the estimate by Defendant Griffiths.

25.    Defendants Janopolis, Buckwalter and Griffiths'' unreasonable investigation led, in part, to the severe underpayment of Plaintiffs' claim thus denying adequate and sufficient payment to Plaintiffs, causing them damages. The mishandling of Plaintiffs' claim has caused delay in their ability to fully repair the home, which has resulted in additional damages. Despite Plaintiffs' dispute of the claim, they have yet to be fully compensated for their damages by Allstate. As a result, Plaintiffs file this lawsuit to recover outstanding amounts due to them by Allstate and for other causes of action stated herein and allowed under the Texas Insurance Code.

26.    As detailed in the paragraphs below, Allstate wrongfully denied Plaintiffs' claim for repairs of the Property, even though the Policy provided coverage for losses such as those suffered by Plaintiffs. Furthermore, Allstate underpaid some of Plaintiffs' claims by not providing full coverage for the damages sustained by Plaintiffs, as well as under-scoping the damages during its investigation.

27.    To date, Allstate continues to delay in the payment for the damages to the Property.  As

such, Plaintiffs have not been paid in full for the damages to their Property.

28.    Defendant Allstate failed to perform its contractual duties to adequately compensate

Plaintiffs under the terms of the Policy.  Specifically, it refused to pay the full proceeds of

the Policy, although due demand was made for proceeds to be paid in an amount sufficient

to cover the damaged property, and all conditions precedent to recovery upon the Policy

had been carried out and accomplished by Plaintiffs.  Allstate's conduct constitutes a

breach of the insurance contract between Allstate and Plaintiffs.

29.    Defendants Allstate, Janopolis, Buckwalter and Griffiths misrepresented to Plaintiffs that

the damage to the Property was not covered under the Policy, even though the damage was

caused by a covered occurrence.  Defendants, Allstate and Janopolis, conduct constitutes a

violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE

§541.060(a)(1).

30.    Defendants Allstate, Janopolis, Buckwalter and Griffiths failed to make an attempt to settle

Plaintiffs' claim in a fair manner, although they were aware of their liability to Plaintiffs

under the Policy. Defendants', Allstate, Janopolis, Buckwalter and Griffith, conduct

constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS.

CODE §541.060(a)(2)(A).

31.    Defendants Allstate, Janopolis, Buckwalter and Griffiths failed to explain to Plaintiffs the

reasons for their offer of an inadequate settlement.  Specifically, Defendants Allstate,

Janopolis, Buckwalter and Griffiths failed to offer Plaintiffs adequate compensation,

without any explanation why full payment was not being made.  Furthermore, Defendants

did not communicate that any future settlements or payments would be forthcoming to pay

for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiffs' claim. Defendants', Allstate, Janopolis, Buckwalter and Griffith, conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(3).

32. Defendants Allstate, Janopolis, Buckwalter and Griffiths failed to affirm or deny coverage of Plaintiffs' claim within a reasonable time. Specifically, Plaintiffs did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendants Allstate and Janopolis. Defendants', Allstate, Janopolis, Buckwalter and Griffith, conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(4).

33. Defendants Allstate, Janopolis, Buckwalter and Griffiths refused to fully compensate Plaintiffs, under the terms of the Policy, even though Defendants Allstate, Janopolis, Buckwalter and Griffiths failed to conduct a reasonable investigation. Specifically, Defendants Allstate, Janopolis, Buckwalter and Griffiths performed an outcome-oriented investigation of Plaintiffs' claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiffs' losses on the Property. This is particularly evident in Janopolis' conversation with Plaintiffs' roofer where Janopolis had made his determination based on payment for roofs to unrelated insured. Defendants', Allstate, Janopolis, Buckwalter and Griffith, conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(7).

34. Defendant Allstate failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiffs' claim, and/or beginning an investigation of Plaintiffs' claim, and/or requesting all information reasonably necessary to investigate Plaintiffs'

claim, within the statutorily mandated time of receiving notice of Plaintiffs' claim. Allstate's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055.

35.    Defendant Allstate failed to accept or deny Plaintiffs' full and entire claim within the statutorily mandated time of receiving all necessary information.  Allstate's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.056.

36.    Defendant Allstate failed to meet its obligations under the Texas Insurance Code regarding payment of claim without delay.  Specifically, it has delayed full payment of Plaintiffs' claim longer than allowed and, to date, Plaintiffs have not received full payment for their claim.  Allstate's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.058.

37.    From and after the time Plaintiffs' claim was presented to Defendant Allstate, the liability of Allstate to pay the full claim in accordance with the terms of the Policy was reasonably clear.  However, Allstate has refused to pay Plaintiffs in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny the full payment.  Allstate's conduct constitutes a breach of the common-law duty of good faith and fair dealing.

38.    Defendants Allstate, Janopolis, Buckwalter and Griffiths knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiffs.

39.     As a result of Defendants', Allstate, Janopolis, Buckwalter and Griffith, wrongful acts and omissions, Plaintiffs were forced to retain the professional services of the attorneys and law firms who are representing them with respect to these causes of action.

40.     Plaintiffs' experience is not an isolated case. The acts and omissions Allstate committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Allstate with regard to handling these types of claims. Allstate's entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders.

### CAUSES OF ACTION:
#### CAUSES OF ACTION AGAINST CHRISTOPHER JANOPOLIS, JOHN BUCKWALTER AND JOSEPH GRIFFITH

#### NONCOMPLIANCE WITH TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

41.     Defendants Christopher Janopolis, John Buckwalter and Joseph Griffiths' conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a). All violations under this article are made actionable by TEX. INS. CODE §541.151.

42.     Defendants Christopher Janopolis, John Buckwalter and Joseph Griffiths are each individually liable for their unfair and deceptive acts, irrespective of the fact they were acting on behalf of Allstate, because each is a "person" as defined by TEX. INS. CODE §541.002(2). The term "person" is defined as "any individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, *adjuster* or life and health insurance counselor." TEX. INS. CODE §541.002(2) (emphasis added). (See also *Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.,* 966 S.W.2d

482, 484 (Tex. 1998) (holding an insurance company employee to be a "person" for the purpose of bringing a cause of action against him or her under the Texas Insurance Code and subjecting him or he to individual liability)).

43. Defendants Christopher Janopolis, John Buckwalter and Joseph Griffiths' unfair settlement practice, as described above, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

44. Defendants Christopher Janopolis, John Buckwalter and Joseph Griffiths' unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability under the Policy is reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

45. The unfair settlement practice of Defendants Christopher Janopolis, John Buckwalter and Joseph Griffiths as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of Plaintiffs' claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

46. D Defendants Christopher Janopolis, John Buckwalter and Joseph Griffiths' settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs, or to submit a reservation of rights to Plaintiffs, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(4).

47. Defendants Christopher Janopolis, John Buckwalter and Joseph Griffiths' unfair settlement practice, as described above, of refusing to pay Plaintiffs' claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(7).

**CAUSES OF ACTION AGAINST ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY ONLY**

48. Defendant Allstate Vehicle & Property Insurance Company is liable to Plaintiffs for intentional breach of contract, as well as intentional violations of the Texas Insurance Code, and intentional breach of the common-law duty of good faith and fair dealing.

**BREACH OF CONTRACT**

49. Defendant Allstate's conduct constitutes a breach of the insurance contract made between Allstate and Plaintiffs.

50. Defendant Allstate's failure and/or refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of Allstate's insurance contract with Plaintiffs.

**NONCOMPLIANCE WITH TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES**

51. Defendant Allstate's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a). All violations under this article are made actionable by TEX. INS. CODE §541.151.

52. Defendant Allstate's unfair settlement practice, as described above, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, constitutes an unfair method of

competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

53.    Defendant Allstate's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Allstate's liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

54.    Defendant Allstate's unfair settlement practice, as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

55.    Defendant Allstate's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs, or to submit a reservation of rights to Plaintiffs, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(4).

56.    Defendant Allstate's unfair settlement practice, as described above, of refusing to pay Plaintiffs' claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(7).

## NONCOMPLIANCE WITH TEXAS INSURANCE CODE:
## THE PROMPT PAYMENT OF CLAIMS

57. Defendant Allstate's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are made actionable by TEX. INS. CODE §542.060.

58. Defendant Allstate's failure to acknowledge receipt of Plaintiffs' claim, commence investigation of the claim and request from Plaintiffs all items, statements, and forms that it reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of claims and a violation of TEX. INS. CODE §542.055.

59. Defendant Allstate's failure to notify Plaintiffs in writing of its acceptance or rejection of the claim within the applicable time constraints constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.056.

60. Defendant Allstate's delay of the payment of Plaintiffs' claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.058.

### REACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

61. Defendant Allstate's conduct constitutes a breach of the common-law duty of good faith and fair dealing owed to insureds in insurance contracts.

62. Defendant Allstate's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiffs' claim, although, at that time, Allstate knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## CAUSES OF ACTION AGAINST ALL DEFENDANTS

### FRAUD

63.  Defendants Allstate Vehicle & Property Insurance Company, Christopher Janopolis, John Buckwalter and Joseph Griffiths are liable to Plaintiffs for common law fraud.

64.  Each and every one of the representations, as described above, concerned material facts for the reason that absent such representations, Plaintiffs would not have acted as they did, and which Defendants Allstate, Janopolis, Buckwalter and Griffiths knew were false or made recklessly without any knowledge of her truth as a positive assertion.

65.  The statements were made with the intention that they should be acted upon by Plaintiffs, who in turn acted in reliance upon the statements, thereby causing Plaintiffs to suffer injury and constituting common law fraud.

### CONSPIRACY TO COMMIT FRAUD

66.  Defendants Allstate Vehicle & Property Insurance Company, Christopher Janopolis, John Buckwalter and Joseph Griffiths are liable to Plaintiffs for conspiracy to commit fraud. Defendants Allstate, Janopolis, Buckwalter and Griffiths were members of a combination of two or more persons whose object was to accomplish an unlawful purpose or a lawful purpose by unlawful means.  In reaching a meeting of the minds regarding the course of action to be taken against Plaintiffs, Defendants Allstate, Janopolis, Buckwalter and Griffiths committed an unlawful, overt act to further the object or course of action. Plaintiffs suffered injury as a proximate result.

## KNOWLEDGE

67.     Each of the acts described above, together and singularly, was done "knowingly," as that term is used in the Texas Insurance Code, and was a producing cause of Plaintiffs' damages described herein.

## DAMAGES

68.     Plaintiffs would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiffs.

69.     As previously mentioned, the damages caused by the hail storm and/or windstorm have not been properly addressed or repaired in the months since the storm, causing further damages to the Property, and causing undue hardship and burden to Plaintiffs. These damages are a direct result of Defendant Allstate and Janopolis, Buckwalter and Griffiths' mishandling of Plaintiffs' claim in violation of the laws set forth above.

70.     For breach of contract, Plaintiffs are entitled to regain the benefit of their bargain, which is the amount of their claim, together with attorney's fees.

71.     For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiffs are entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, mental anguish, court costs, and attorney's fees. For knowing conduct of the acts described above, Plaintiffs ask for three times their actual damages. TEX. INS. CODE §541.152.

72.     For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiffs are entitled to the amount of their claim, as well as eighteen (18) percent interest per annum on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE §542.060.

73. For breach of the common-law duty of good faith and fair dealing, Plaintiffs are entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages, and damages for emotional distress.

74. For fraud, Plaintiffs are entitled to recover actual damages and exemplary damages for knowingly fraudulent and malicious representations, along with attorney's fees, interest, and court costs.

75. For the prosecution and collection of this claim, Plaintiffs have been compelled to engage the services of the attorneys whose names are subscribed to this pleading. Therefore, Plaintiffs are entitled to recover a sum for the reasonable and necessary services of Plaintiffs' attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

### JURY DEMAND

76. Plaintiffs hereby request that all causes of action alleged herein be tried before a jury consisting of citizens residing in Harris County, Texas. Plaintiffs hereby tender the appropriate jury fee.

### WRITTEN DISCOVERY

### REQUESTS FOR DISCLOSURE

77. *Plaintiffs' Request for Disclosure to Defendant Allstate Vehicle & Property Insurance Company* is attached as "Exhibit A." *Plaintiffs' Request for Disclosure to Christopher Janopolis* is attached as "Exhibit A-1." *Plaintiffs' Request for Disclosure to John Buckwalter* is attached as "Exhibit A-2." *Plaintiffs' Request for Disclosure Joseph Griffiths* is attached as "Exhibit A-3."

## REQUESTS FOR PRODUCTION

78.     *Plaintiffs' Requests for Production to Defendant Allstate Vehicle & Property Insurance Company* is attached as "Exhibit B."   *Plaintiffs' Requests for Production to Defendant Christopher Janopolis* is attached as "Exhibit B-1." *Plaintiffs' Requests for Production to Defendant John Buckwalter* is attached as "Exhibit B-2."   *Plaintiffs' Requests for Production to Defendant Joseph Griffiths* is attached as "Exhibit B-3."

## REQUESTS FOR INTERROGATORIES

79.     *Plaintiff Carlos Durham's First Set of Interrogatories to Defendant Allstate Vehicle & Property Insurance Company* is attached as "Exhibit C."   *Plaintiff Carlos Durham's First Set of Interrogatories to Defendant Christopher Janopolis* is attached as "Exhibit C-1." *Plaintiff Carlos Durham's First Set of Interrogatories to Defendant John Buckwalter* is attached as "Exhibit C-2."   *Plaintiff Carlos Durham's First Set of Interrogatories to Defendant Joseph Griffiths* is attached as "Exhibit C-3."

## STANDING PRETRIAL ORDER

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon trial hereof, said Plaintiffs have and recover such sums as would reasonably and justly compensate them in accordance with the rules of law and procedure, as to actual damages, treble damages under the Texas Insurance Code, and all punitive and exemplary damages as may be found.  In addition, Plaintiffs request the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on their behalf expended, for prejudgment and post judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which they may show themselves justly entitled.

Respectfully submitted,

**LAW OFFICE OF MYNOR E. RODRIGUEZ, P.C.**

*/s/ Mynor "Eddie" Rodriguez*
Mynor "Eddie" Rodriguez
State Bar No. 24037381
1300 McGowen, Suite 280
Houston, TX 77004
(832) 779-1081 (Office)
(832) 553-7420 (Facsimile)
mrodriguez@rodrigueztrialfirm.com

**ATTORNEY FOR PLAINTIFFS**

**"EXHIBIT A"**

**CAUSE NO._____**

| | | |
|---|---|---|
| **CARLOS DURHAM AND DEBORAH** | § | **IN THE DISTRICT COURT OF** |
| **DURHAM,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ALLSTATE VEHICLE & PROPERTY** | § | |
| **INSURANCE COMPANY,** | § | |
| **CHRISTOPHER JANOPOLIS, JOHN** | § | |
| **BUCKWALTER AND JOSEPH** | § | |
| **GRIFFITH,** | § | |
| *Defendants.* | § | **____ JUDICIAL DISTRICT** |

**PLAINTIFFS' REQUEST FOR DISCLOSURE TO DEFENDANT**
**ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY**

TO:     DEFENDANT ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY, by
and through its Attorney for Service: CT Corporation, 1999 Bryan St., Suite 900, Dallas,
Texas 75201-3136.

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs request that the
above-named Defendant, ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY
(hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of
service of this request, the information or material described in Rule 194.2.

Respectfully submitted,

**LAW OFFICE OF MYNOR E. RODRIGUEZ, P.C.**

/s/ *Mynor "Eddie" Rodriguez*
Mynor "Eddie" Rodriguez
State Bar No. 24037381
1300 McGowen, Suite 280
Houston, TX 77004
(832) 779-1081 (Office)
(832) 553-7420 (Facsimile)
mrodriguez@rodrigueztrialfirm.com

**ATTORNEYS FOR PLAINTIFFS**

**"EXHIBIT A-1"**

## CAUSE NO._____

| | | |
|---|---|---|
| **CARLOS DURHAM AND DEBORAH** | § | **IN THE DISTRICT COURT OF** |
| **DURHAM,** | § | |
|     *Plaintiffs,* | § | |
| | § | |
| .v. | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ALLSTATE VEHICLE & PROPERTY** | § | |
| **INSURANCE COMPANY,** | § | |
| **CHRISTOPHER JANOPOLIS, JOHN** | § | |
| **BUCKWALTER AND JOSEPH** | § | |
| **GRIFFITH,** | § | |
|     *Defendants.* | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFFS' REQUEST FOR DISCLOSURE TO
## DEFENDANT CHRISTOPHER JANOPOLIS

TO:    DEFENDANT CHRISTOPHER JANOPOLIS, by personal service at his place of residence, 5319 LAKE WILSON RD, ELM CITY, NC 27822-8358.

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs request that the above-named Defendant, CHRISTOPHER JANOPOLIS (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in Rule 194.2.

Respectfully submitted,

**LAW OFFICE OF MYNOR E. RODRIGUEZ, P.C.**

*/s/ Mynor "Eddie" Rodriguez*
Mynor "Eddie" Rodriguez
State Bar No. 24037381
1300 McGowen, Suite 280
Houston, TX 77004
(832) 779-1081 (Office)
(832) 553-7420 (Facsimile)
mrodriguez@rodrigueztrialfirm.com

**ATTORNEYS FOR PLAINTIFFS**

**"EXHIBIT A-2"**

**CAUSE NO._____**

| | | |
|---|---|---|
| **CARLOS DURHAM AND DEBORAH** | § | **IN THE DISTRICT COURT OF** |
| **DURHAM,** | § | |
|     *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ALLSTATE VEHICLE & PROPERTY** | § | |
| **INSURANCE COMPANY,** | § | |
| **CHRISTOPHER JANOPOLIS, JOHN** | § | |
| **BUCKWALTER AND JOSEPH** | § | |
| **GRIFFITH,** | § | |
|     *Defendants.* | § | **____ JUDICIAL DISTRICT** |

**PLAINTIFFS' REQUEST FOR DISCLOSURE TO
DEFENDANT JOHN BUCKWALTER**

TO:    DEFENDANT JOHN BUCKWALTER, by personal service at his place of residence, 2300 BROADMOOR DRIVE, APT 50, BRYAN, TX 77802-2638.

       Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs request that the above-named Defendant, JOHN BUCKWALTER (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in Rule 194.2.

                          Respectfully submitted,

                          **LAW OFFICE OF MYNOR E. RODRIGUEZ, P.C.**

                          */s/ Mynor "Eddie" Rodriguez*
                          Mynor "Eddie" Rodriguez
                          State Bar No. 24037381
                          1300 McGowen, Suite 280
                          Houston, TX 77004
                          (832) 779-1081 (Office)
                          (832) 553-7420 (Facsimile)
                          mrodriguez@rodrigueztrialfirm.com

                          **ATTORNEYS FOR PLAINTIFFS**

"EXHIBIT A-3"

CAUSE NO._____

| | | |
|---|---|---|
| **CARLOS DURHAM AND DEBORAH DURHAM,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiffs*, | § | |
| | § | |
| | § | |
| v. | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ALLSTATE VEHICLE & PROPERTY** | § | |
| **INSURANCE COMPANY,** | § | |
| **CHRISTOPHER JANOPOLIS, JOHN** | § | |
| **BUCKWALTER AND JOSEPH** | § | |
| **GRIFFITH,** | § | |
| *Defendants*. | § | **____ JUDICIAL DISTRICT** |

## PLAINTIFFS' REQUEST FOR DISCLOSURE TO DEFENDANT JOSEPH GRIFFITH

TO:   DEFENDANT JOSEPH GRIFFITH, by personal service at his place of residence, 720 SPRING LAKE DRIVE, DESTIN FL 32541-1967.

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs request that the above-named Defendant, JOSEPH GRIFFITH (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in Rule 194.2.

Respectfully submitted,

**LAW OFFICE OF MYNOR E. RODRIGUEZ, P.C.**

/s/ *Mynor "Eddie" Rodriguez*
Mynor "Eddie" Rodriguez
State Bar No. 24037381
1300 McGowen, Suite 280
Houston, TX 77004
(832) 779-1081 (Office)
(832) 553-7420 (Facsimile)
mrodriguez@rodrigueztrialfirm.com

**ATTORNEYS FOR PLAINTIFFS**

**"EXHIBIT B"**

**CAUSE NO. _____**

| | | |
|---|---|---|
| **CARLOS DURHAM AND DEBORAH** | § | **IN THE DISTRICT COURT OF** |
| **DURHAM,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ALLSTATE VEHICLE & PROPERTY** | § | |
| **INSURANCE COMPANY,** | § | |
| **CHRISTOPHER JANOPOLIS, JOHN** | § | |
| **BUCKWALTER AND JOSEPH** | § | |
| **GRIFFITH,** | § | |
| *Defendants.* | § | **____ JUDICIAL DISTRICT** |

## PLAINTIFFS' REQUESTS FOR PRODUCTION TO DEFENDANT ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY

TO:   DEFENDANT ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY, by and through its Attorney for Service: CT Corporation, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

Pursuant to Rule 196 of the Texas Rules of Civil Procedure, Plaintiffs request that the above-named Defendant, ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in the following requests for production.

Respectfully submitted,

**LAW OFFICE OF MYNOR E. RODRIGUEZ, P.C.**

/s/ *Mynor "Eddie" Rodriguez*
Mynor "Eddie" Rodriguez
State Bar No. 24037381
1300 McGowen, Suite 280
Houston, TX 77004
(832) 779-1081 (Office)
(832) 553-7420 (Facsimile)
mrodriguez@rodrigueztrialfirm.com

**ATTORNEYS FOR PLAINTIFFS**

## INSTRUCTIONS

1.  Answer each request for documents separately by listing the documents and by describing them as defined below. If documents are numbered for production, in each response provide both the information that identifies the document and the document's number(s). There is a duty to supplement any answer made to the request for documents when the original answer is no longer true, or was incorrect or incomplete when made.

2.  For each document or other requested information that you assert is privileged or is not discoverable, identify that document or other requested information. State the specific grounds for the claim of privilege or other applicable ground for exclusion. Also, for each document you claim is not discoverable, state the date of the document, the name, job title, and address of the person who prepared it; the name, address and job title of the person to whom it was addressed circulated, or who saw it; the name, job title, and address of the person now in possession of the document; a description of the subject matter of the document; the document's present location; and the custodian for the document.

3.  For a document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence or could no longer be located, and the reasons for the disappearance. Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

4.  The documents produced pursuant to the following requests for documents are considered to be authentic unless a proper objection is asserted as to the documents' authenticity under the Texas Rules of Civil Procedure.

5.  Pursuant to Rule 196.4, you are requested to product electronic or magnetic data responsive to the Request for Production below in native file format, including email, instant message and PDF forms of the documents. Native file format is a file saved in the format at designated by the original application used to create it.

## DEFINITIONS

The following definitions shall have the following meanings, unless the context of the requests for documents require otherwise:

1.  "PLAINTIFFS," means Carlos Durham and Deborah Durham, along with their family members, agents, representatives, and all other persons acting in concert with them, or under their control, whether directly or indirectly, including any attorney.

2.  "DEFENDANT," means ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY, along with its agents, representatives, and all other persons acting in concert with it, or under its control, whether directly or indirectly, including any attorney.

3.  "DOCUMENT," "DOCUMENTS" and "DOCUMENTATION" are used in their broadest sense and mean all written, printed, typed, recorded, or graphic matter of every kind and description, source and authorship, both originals and all nonidentical copies thereof, and all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative or private entity or person. Without limiting the foregoing, the terms "document" and "documents" include handwritten, typewritten, printed, photocopied, photographic or recorded, stenographic, computer-generated, computer-installed or electronically stored matters, however and by whomever produced, prepared, reproduced, disseminated or made, and includes communications in words, symbols, pictures, sound recordings, films, tapes and information stored in, or accessible through, computer of other information storage or retrieval systems, together with the codes and/or programming instruction and other materials necessary to understand and use such systems. For purposes of illustration and no limitation, "documents" includes: accounts; advertising; affidavits; agendas; agreements; analyses; analytical records; announcements; appointment books; appraisals; articles; bills; statements and other records of obligations and expenditures; books; brochures; bulletins; calendars; checks; cancelled checks, vouchers, receipts and other records of payments; charts, drawings; check registers; checkbooks; circulars; collateral files and contents; communications; compilations; confirmations; consultant's reports; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; data compilations from which information can be obtained (including matter used in data processing); deeds of trust; deposit slips, diaries, diary entries; drafts; envelopes; folders or similar containers; expense reports; facsimile transmissions; files; film tape; financial statements; forecasts; graphs; guaranty agreements; instructions, invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; letters of credit; lists; log books; logs, notes or memoranda of telephonic or face-to-face conversations; manuals; maps, marginal notations; memoranda of all kinds to and from any persons, agencies or entities; messages; microfilm; microfiche; minutes; minute books; notes; notebooks; notices; pamphlets; parts lists; papers; photographs, press releases; printed

matter (including published books, articles, speeches and newspaper clippings); printouts; programs; punch cards; purchase orders; receipts; recommendations; records; records of administrative, technical and financial actions taken or recommenced; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; sell orders; sound recordings; specifications; speeches; statement of bank accounts; statements, interviews; statistical data; statistical statements, stock transfer ledger; studies; surveys; tables; tabulations; tape or disk recordings; tape programs; technical and engineering reports, evaluations; advice; recommendations; commentaries; conclusions; studies; test plans; manuals; procedures; data; reports; results and conclusions; summaries, minutes, notes and other records and recording of any conference, meetings, visits, negotiations, statement, interviews or telephone conversations; other summaries; telegrams; teletypes, telexes and other communications sent or received; time records; telephone bills or records; trade letters; transcripts of hearings; transcripts of testimony; UCC instruments; video recordings; visitor records; vouchers; work assignments; work sheets; work papers; and all other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored or electronically stored matter, however or by whomever produced, prepared, reproduced, disseminated or made, the contents of which relate to, discuss, consider or otherwise refer to the subject matter of the particular discovery requested.

4.  "PERSON" includes individuals, associates of individuals, partnerships, joint-stock companies, corporations, or trustee or receiver of an individual, association of individuals, joint-stock company or corporation, and any other type of entity or institution, whether formed for business or any other purposes.

5.  "PARTY" shall mean any party whomsoever to the dispute, and includes each party's agents, employees, attorneys, representatives, predecessors, successors, affiliates, partners, officers, directors, principals and any and all other persons acting or purporting to act on the party's behalf or under the party's control. For purposes of the duty to supplement, the term also includes entities, which become parties subsequent to the date this request for documents is served.

6.  "RELATING TO" and or "RELATES TO" means in whole or in part constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, or dealing with, or in any way pertaining to.

7.  "CONCERNING" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, and constituting.

8.  "COMMUNICATION" means the transmission, sending and/or receipt of information of any kind by or through any means, including but not limited to speech, writings, language (machine, foreign or otherwise), computer electronics of any kind (e.g., email), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, "floppy disks", CD-ROM disks, sound, radio or video signals, telecommunication, telephone teletype, facsimile, telegraph, microfilm, microfiche, photographic film of any type and

other media of any kind. The term "communication" also includes, without limitations all "records" (as hereafter defined) and all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, and press, publicity or trade releases.

9. "RECORD(S)" means all documents and writings of any kind, and all communications (as defined above) which are stored or retrievable or recorded in any manner, including originals and all non-identical copies whether different from the originals by notation made on such copies or otherwise, all drafts, alterations, modifications, changes and amendments, graphic or any electronic or mechanical records or representation of any kind, created during the period 2000 to present. Any electronic records or computer data which may exist shall be produced in its native file format. Native file format is a file saved in the format as designated by the original application used to create it. Such electronic data should be provided on one of the following media: USB flash drive, CD-ROM or DVD-ROM.

10. "Electronic or magnetic data" means electronic information that is stored in a medium from which it can be retrieved and examined. The term refers to the original (or identical duplicate when the original is not available) and any other copies of the data that may have attached comments, notes, marks, or highlighting of any kind. Electronic or magnetic data includes, but is not limited to, the following: computer programs; operating systems; computer activity logs; programming notes or instructions; e-mail receipts, messages, or transmissions; output resulting from the use of any software program, including word-processing documents, spreadsheets, database files, charts, graphs, and outlines; metadata; TIFF and PDF files; batch files; deleted files; temporary files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; adjuster log(s), ; and any miscellaneous files or file fragments. Electronic or magnetic data includes any items stored on magnetic, optical, digital, or other electronic-storage media, such as hard drives, floppy disks, CD-ROMs, DVDs, tapes, smart cards, integrated-circuit cards (e.g., SIM cards), removable media (e.g., Zip drives, Jaz cartridges, flash drives, removable/portable hard drives and backup drives), microfiche, punched cards. Electronic or magnetic data also includes the file, folder, tabs, containers, and labels attached to or associated with any physical storage device with each original or copy.

11. "DATE" means the exact date, month, and year, if ascertainable, or, if not, the best available approximation.

12. "DESCRIBE" and "IDENTIFY", when referring to a person, require statements of the following:

   a.   The full name.
   b.   The present or last known residential address.
   c.   The present or last known residential and office telephone numbers.
   d.   The present occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular request.

e.    In the case of any person other than an individual, identify the officer, employee, or agent most closely connected with the subject matter of the request and identify the officer who is responsible for supervising that officer or employee.

13.    "DESCRIBE" and "IDENTIFY", when referring to a document, are defined to require that you state the following:

a.    The nature (e.g., letter, handwritten note) of the document

b.    The title or heading that appears on the document

c.    The date of the document and the date of each addendum supplement, or other addition or change.

d.    The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

e.    The present location of the document, and the name, address, position, or title, and telephone number of the person or person having custody of the document.

14.    The words "AND" and "OR" should be construed either conjunctively or disjunctively as required by the context to bring within the scope of these discovery requests any answer, response or document that might be deemed outside its scope by another construction.

15.    "PERTAINS TO" or "PERTAINING TO" means relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, reflects, refutes, disputes, rebuts, controverts or contradicts.

16.    The term "LAWSUIT" means Cause No. _____, *CARLOS DURHAM AND DEBORAH DURHAM VS. ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY, CHRISTOPHER JANOPOLIS, JOHN BUCKWALTER AND JOSEPH GRIFFITH,* In the District Court of Harris County, Texas, ___th Judicial District

17.    "RESIDENCE" and/or "PROPERTY" refers to the property located at 24703 Kennington Way, Spring, TX 77389.

## PLAINTIFFS' REQUESTS FOR PRODUCTION TO
## DEFENDANT ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY

1.  Plaintiffs' insurance policy in effect on the date of Plaintiffs' claim(s) made the basis of this lawsuit.

    RESPONSE:

2.  The entire claims investigation file generated and maintained by Defendant in the ordinary course of business pertaining to Plaintiffs' claim(s) made the basis of this lawsuit.

    RESPONSE:

3.  All training and educational materials which instruct claim adjusters, claim handlers, claim representatives and independent adjusters in handling claims for property damage under residential and/or homeowners insurance policies in Texas. This request is limited to the last five (5) years.

    RESPONSE:

4.  All training and educational materials which instruct claim adjusters, claim handlers, claim representatives and independent adjusters in handling claims for hail damage, water damage, roof damage and/or wind damage under residential and/or homeowners insurance policies in Texas. This request is limited to the last five (5) years.

    RESPONSE:

5.  All procedure or policy manuals or guides meant to guide and assist claim adjusters, claim handlers, claim representatives and independent adjusters in handling claims for property damage, including the criteria for and the process for evaluating whether coverage exists under residential and/or homeowners insurance policies in Texas. This request is limited to the last five (5) years.

    RESPONSE:

6.  All procedure or policy manuals or guides meant to guide and assist claim adjusters, claim handlers, claim representatives and independent adjusters in handling claims for hail damage, water damage, roof damage and/or wind damage, including the criteria for and the process for evaluating whether coverage exists under residential and/or homeowners insurance policies in Texas. This request is limited to the last five (5) years.

    RESPONSE:

7.  All communications and documents, including electronic (emails, text messages, instant messages, etc.), between Defendant and Plaintiffs regarding Plaintiffs' claim(s).

    RESPONSE:

8.  All communications and documents, including electronic (emails, text messages, instant messages, etc.), between Defendant and any third party regarding Plaintiffs' claim(s).

    RESPONSE:

9.  All communications and documents, including electronic (emails, text messages, instant messages, etc.), between Defendant and any other defendant(s) regarding Plaintiffs' claim(s).

    RESPONSE:

10. All communications and documents, including electronic (emails, text messages, instant messages, etc.), between Defendant's business departments regarding Plaintiffs' claim(s).

    RESPONSE:

11. All communications and documents, including electronic (emails, text messages, instant messages, etc.), Defendant sent to any other defendant(s) in this lawsuit regarding Plaintiffs, Plaintiffs' Property, or Plaintiffs' claim made the basis of this lawsuit, after Plaintiffs made their claim(s) for coverage.

    RESPONSE:

12. All photographs, diagrams, drawings, videos or other graphic depictions of Plaintiffs or Plaintiffs' Property.

    RESPONSE:

13.  Any and all documents, including but not limited to reports, data, emails, instant messages, text messages, notes and summaries regarding Plaintiffs' claim(s) made the basis of this lawsuit.

     RESPONSE:

14.  All reports and other documents from governmental agencies or offices regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit or containing officially kept information regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit.

     RESPONSE:

15.  Any and all claim files and claim reports, including but not limited to notes, log notes, activity logs, daily logs, field notes, estimates, emails, text messages, instant messages, payment documents, photos, videos, summaries, and any other claim data or documents regarding all residential and/or homeowners insurance claims made by Plaintiffs under their residential and/or homeowners insurance policies.

     RESPONSE:

16.  All documents regarding testing or sampling on or at Plaintiffs' Property made the basis of this Lawsuit.

     RESPONSE:

17.  All photographs and videos regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this Lawsuit.

     RESPONSE:

18.  All documents, videos, photos, drawings or other graphical depictions of any inspection of Plaintiffs' Property or relating to any inspection of Plaintiffs' Property.

     RESPONSE:

19.    Any and all records Defendant received, including those obtained by way of deposition upon written questions, regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this Lawsuit.

       RESPONSE:


20.    Any and all non-privileged records or documents Defendant has reviewed and/or obtained regarding Plaintiffs' or Plaintiffs' Property made the basis of this Lawsuit.

       RESPONSE:


21.    Any and all claim files Defendant has reviewed and/or obtained regarding Plaintiffs' Property made the basis of this Lawsuit.

       RESPONSE:


22.    Any and all records or documents Defendant has reviewed and/or obtained from third parties (excluding testifying experts) regarding Plaintiffs, Plaintiffs' Property and/or Plaintiffs' claim made the basis of this Lawsuit.

       RESPONSE:


23.    All bulletins or other communications received from the Texas Department of Insurance, the Texas Insurance Commissioner and/or their employees, agents or representatives regarding practices in the handling of claims for property damage, hail damage, water damage, roof damage and wind damage under residential and/or homeowners insurance policies in Texas. This request is limited to the last five (5) years.

       RESPONSE:


24.    All materials meant to instruct and guide claim adjusters, claim handlers, claim representatives and independent adjusters under Texas law and/or company policy with regard to unfair claims settlement practices, unfair claims handling practices, standards to be met in adjusting or handling first party insurance claims, or avoiding charges of bad faith in Texas. This request is limited to the last five (5) years.

       RESPONSE:

25.   All materials meant to instruct and guide claim adjusters, claim handlers, claim representatives and independent adjusters under Texas law and/or company policy with regard to understanding and complying with the Texas Insurance Code §541.060 and/or Article 21.21. This request is limited to the last five (5) years.

      RESPONSE:

26.   All materials meant to instruct and guide claim adjusters, claim handlers, claim representatives and independent adjusters under Texas law and/or company policy with regard to understanding and complying with the Texas Insurance Code §542.055 *et esq.* and/or Article 21.55. This request is limited to the last five (5) years.

      RESPONSE:

27.   Any and all materials, documents, statements and/or files that demonstrate Defendant's net worth and Defendant's net income. This request is limited to the last five (5) years.

      RESPONSE:

28.   A copy of each advertisement for homeowner's insurance Defendant has used, published and/or distributed, through any means, in Texas. This request is limited to the last five (5) years.

      RESPONSE:

29.   Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents used or relied upon by Defendant to conduct any training, seminars and/or classes for Defendant's employees and/or claim adjusters, claim handlers, claim representatives and/or independent adjusters regarding the adjusting and/or handling of residential and/or homeowners insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims and/or wind damage claims in Texas. This request is limited to the last five (5) years.

      RESPONSE:

30.    Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents issued by Defendant to Defendant's employees and/or claim adjusters, claim handlers, claim representatives and/or independent adjusters pertaining to the adjusting and/or handling of residential and/or homeowners insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

31.    Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slide and/or other documents issued by any third party to Defendant's employees and/or claim adjusters, claim handlers, claim representatives and/or independent adjusters pertaining to the adjusting and/or handling of residential and/or homeowners insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

32.    Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents distributed and/or disbursed to Defendant's employees, agents, representatives, claim adjusters, claim handlers, claim representatives and/or independent adjusters in connection with attendance at seminars and/or continuing education classes regarding the adjusting and/or handling of residential and/or homeowners insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

33.    Any and all materials reflecting Defendant's attendance policies, requirements or expectations for employees, agents, representatives, claim adjusters, claim handlers, claim representatives and/or independent adjusters to attend training, seminars and/or classes regarding the adjusting and/or handling of residential and/or homeowners insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

34.    Any and all materials, documents, files and/or reports sent to Defendant by its employees, agents, representatives, claim adjusters, claim handlers, claim representatives and/or independent adjusters and/or any adjusting company, including any sent on a monthly, weekly, or daily basis regarding Plaintiffs' claim(s). Include any and all field notes and summaries of the room-by-room scope of Plaintiffs' Property made the basis of this Lawsuit.

       RESPONSE:

35.    Any and all materials, documents, files, and/or reports containing list(s) of contractors and/or roofing companies that have been approved and/or recommended for performance of services for Defendant in Texas, specifically related to residential and/or homeowners insurance claims. This request is limited to the last five (5) years.

       RESPONSE:

36.    Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents that have been received by, distributed by, disbursed by and/or disbursed to Defendant regarding the price estimates of contractors and changes of those estimates within different geographical areas of the State of Texas. This request is limited to the last five (5) years.

       RESPONSE:

37.    Any and all pricing studies and/or pricing guides and supporting documents pertaining to the prices of materials and/or labor to repair property damage within Texas, including the Houston, Texas Gulf Coast and Harris County areas from January 1, 2015 to present.

       RESPONSE:

38.    Any and all materials, documents, files, invoices, and/or reports received from any and all contractors, roofing companies and/or roofing manufacturers (excluding testifying experts) retained to investigate, inspect, and/or evaluate Plaintiffs' claim(s) made the basis of this lawsuit.

       RESPONSE:

39.    A complete copy of the entire personnel file(s) of any and all adjusters assigned to Plaintiffs' claim made the basis of this Lawsuit.

       RESPONSE:

40.   Any and all activity logs, daily logs or other documents relating to Plaintiffs' claim(s) for property damage, hail damage, water damage, roof damage and/or wind damage to their Property for the claim(s) made the basis of this suit.

RESPONSE:

41.   Any and all activity logs, daily logs and other documents relating to each and every claim other than the claim made the basis of this lawsuit, if any, made by Plaintiffs for property damage, hail damage, water damage, roof damage and/or wind damage to their Property.

RESPONSE:

42.   Any and all documents reflecting company guidelines, procedures, or policies that serve as criteria for evaluating whether claims are covered or excluded by any policy provisions Defendant contends apply to Plaintiffs' claim(s).

RESPONSE:

43.   Any and all organizational charts for Defendant. This is limited to the last three (3) years.

RESPONSE:

44.   Any and all organizational charts or diagrams for each department, unit, or section of Defendant to which Plaintiffs' claim(s) was assigned.  This request is limited to the last three (3) years.

RESPONSE:

45.   Any and all charts or diagrams reflecting the chain of command or supervisory hierarchy relating to each person involved in handling Plaintiffs' claim(s).

RESPONSE:

46.   Any and all records relating to or reflecting payment to Plaintiffs concerning Plaintiffs' claim(s) made the basis of this lawsuit.

RESPONSE:

47.   Any and all documents relating to or reflecting any and all adjusters assigned to Plaintiffs' claim made the basis of this Lawsuit, from the time of hiring through the present. This is limited to the last five (5) years.

   RESPONSE:

48.   Any and all documents relating to or reflecting the assignment of Plaintiffs' claim(s) to any and all adjusting companies and adjusters assigned to Plaintiffs' claim made the basis of this Lawsuit from the time of hiring on Plaintiffs' claim through the present.

   RESPONSE:

49.   Any and all certifications or licenses of persons who investigated, adjusted and/or supervised the adjusting of Plaintiffs' claim(s) pertaining to the Property made the basis of this Lawsuit and/or who inspected Plaintiffs' Property made the basis of this lawsuit.

   RESPONSE:

50.   Any and all documents, including but not limited to contracts, fee schedules, rules, policies, procedures, guidelines and/or instructions exchanged between Defendant and any and all adjusting companies or adjusters assigned to Plaintiffs' claim made the basis of this Lawsuit from the time of hiring through the present. This is limited to the last five (5) years.

   RESPONSE:

51.   All physical or tangible items and evidence obtained by or on behalf of Defendant from Plaintiffs' Property made the basis of this suit.

   RESPONSE:

52.   Any and all indemnity agreements between Defendant and any other person, firm, corporation or entity against which a claim of indemnification might be brought because of this lawsuit or the facts in this lawsuit.

   RESPONSE:

53. Any and all policies, procedures and guidelines pertaining to the handling by Defendant of complaints made by residential insureds. This request is limited to the last three (3) years.

RESPONSE:

54. Copies of all job descriptions of employees, agents or representatives that investigated, adjusted or in any way supervised the handling of Plaintiffs' claim(s) made the basis of this lawsuit.

RESPONSE:

55. All e-mails, text messages and instant messages regarding the investigation, adjusting and/or handling of Plaintiffs' claim(s) made the basis of this lawsuit.

RESPONSE:

56. All e-mails, text messages and instant messages between Defendant's employees, claim adjusters, claim handlers, claim representatives, independent adjusters, agents, supervisors, officers, and/or executives regarding educational programs or changes in the educational programs relating to the handling of property damage, hail damage, water damage, roof damage and/or wind damage claims. This is limited to the last five (5) years.

RESPONSE:

57. All memos or other documents between Defendant's employees, claim adjusters, claim handlers, claim representatives, independent adjusters, agents, supervisors, officers, and/or executives regarding educational programs or changes in the educational programs relating to the handling of property damage, hail damage, water damage, roof damage and/or wind damage claims. This is limited to the last five (5) years.

RESPONSE:

58. True and complete copies of all billing records, time sheets and/or documents used to justify billing from any and all adjusters and independent adjusters regarding Plaintiffs' claim(s) made the basis of this lawsuit.

RESPONSE:

59.    True and complete copies of all billing records, time sheets and/or documents used to justify billing from any and all adjusting companies regarding Plaintiffs' claim(s) made the basis of this lawsuit.

RESPONSE:

60.    Any and all reports, documents or correspondence reflecting the reserving and payment history of indemnity, expenses, and vendors on Plaintiffs' claim made the basis of this lawsuit, including but not limited to dates, changes and requests made by all adjusters or their supervisors or managers.

RESPONSE:

61.    Any and all reports, documents or correspondence reflecting the reserving and payment history of indemnity, expenses, and vendors on any claim made by Plaintiffs for property damage to the Property made the basis of this lawsuit, including but not limited to dates, changes and requests made by all adjusters or their supervisors or managers.

RESPONSE:

62.    Any and all documents concerning the issues of honesty, moral turpitude, criminal actions, criminal conduct and/or fraud investigation of any person assigned to investigate, handle, adjust or review Plaintiffs' claim made the basis of this lawsuit.

RESPONSE:

63.    Any and all affidavits made by Defendant's employees or representatives as to discovery requests for training procedures and training manuals regarding property damage, hail damage, water damage, roof damage and/or wind damage claims. This request is limited to the last five (5) years and to requests made in Texas litigation.

RESPONSE:

64.    Any and all non-privileged documents containing the names of individuals designated or who gave testimony as Person Most Knowledgeable regarding property damage, hail damage, water damage, roof damage and/or wind damage claims from 2015 through the present.

RESPONSE:

65.     Any and all demand letters, lawsuits and/or subrogation claims filed against any vendors, adjusters and/or independent adjusting companies by Defendant.  This request is limited to the last five (5) years and in the State of Texas.

        RESPONSE:

66.     Any and all demand letters, lawsuits and/or subrogation claims filed by any vendors, adjusters and/or independent adjusting companies against Defendant.  This request is limited to the last five (5) years and in the State of Texas.

        RESPONSE:

67.     Any and all reports, documents or correspondence containing lists of attendees, dates and/or locations of all meetings, training, presentations and/or classes conducted by Defendant or on behalf of Defendant for independent adjusters and/or Defendant's employees and staff, including adjusters, regarding Houston and Texas Gulf Coast area property damage claims, hail damage claims, water damage claims, roof damage claims and/or wind damage claims from January 1, 2015 to present.

        RESPONSE:

68.     Any and all reports, documents or correspondence regarding written complaints received by Defendant pertaining to property damage claims, hail damage claims, water damage claims, roof damage claims and/or wind damage claims. This request is limited to the last three (3) years.

        RESPONSE:

69.     Any and all reports, documents or correspondence containing lists of lawsuits filed against Defendant or its entities or affiliates nationwide pertaining to property damage, hail damage, water damage, roof damage and/or wind damage from 2015 through the present.

        RESPONSE:

70.     Copies of the front and back of each check made payable solely or co-payable to Plaintiffs under any insurance policy issued to Plaintiffs by Defendant.

        RESPONSE:

71. Copies of the front and back of each negotiated check made payable solely or co-payable to Plaintiffs under any insurance policy issued to Plaintiffs by Defendant.

    RESPONSE:

72. Copies of the front and back of each check made payable solely or co-payable to Plaintiffs regarding the insurance claim made the basis of this lawsuit.

    RESPONSE:

73. Copies of the front and back of each negotiated check made payable solely or co-payable to Plaintiffs regarding the insurance claim made the basis of this lawsuit.

    RESPONSE:

74. Studies commissioned by Defendant, including any done by a law firm to analyze their claim management strategies and/or to help Defendant improve corporate profits.

    RESPONSE:

75. Affidavits or depositions of Defendant's employee(s) who handled Plaintiffs' claim(s) in other cases involving the same or similar allegations in this case. This is limited to the last five (5) years.

    RESPONSE:

76. The entire underwriter's file for underwriting the insurance policy made the basis of this lawsuit.

    RESPONSE:

77. All notes, reports, documents, applications and photographs created and/or generated by Defendant's underwriting department relating to the insurance policy or Plaintiffs' Property made the basis of this lawsuit.

    RESPONSE:

78. All applications completed by Plaintiffs or on Plaintiffs' behalf relating to the insurance policy made the basis of this lawsuit.

RESPONSE:

79. Any and all documents and materials, including instructional, "how to" or teaching manuals pertaining to any computer program Defendant used to perform property damage estimates on residential and/or homeowners insurance claims in Texas, including any materials relating to the computer program used to adjust Plaintiffs' claim(s). This request is limited to the last five (5) years.

RESPONSE:

80. Any and all documents, including training, educational and instructional materials, "how to" manuals or teaching manuals provided by Defendant or on behalf of Defendant to employees, agents, representatives, claim adjusters, claim handlers, claim representatives and independent adjusters in the use of computer programs to perform property damage estimates on residential and/or homeowners insurance claims in Texas, including the computer program used to adjust Plaintiffs' claim(s). This request is limited to the last five (5) years.

RESPONSE:

81. If you are withholding documents based upon the assertion of a privilege, please produce a privilege log, detailing with reasonable particularity a description of the documents withheld, the number of documents, and the applicable privilege which Defendant claims properly precludes the information discovery.

RESPONSE:

**"EXHIBIT B-1"**

CAUSE NO. _____

| | | |
|---|---|---|
| **CARLOS DURHAM AND DEBORAH DURHAM,** | § § § | **IN THE DISTRICT COURT OF** |
| *Plaintiffs,* | § § | |
| **v.** | § § | **HARRIS COUNTY, TEXAS** |
| **ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY, CHRISTOPHER JANOPOLIS, JOHN BUCKWALTER AND JOSEPH GRIFFITH,** | § § § § § § | |
| *Defendants.* | § | **____ JUDICIAL DISTRICT** |

## PLAINTIFFS' REQUESTS FOR PRODUCTION TO DEFENDANT CHRISTOPHER JANOPOLIS

TO:   DEFENDANT CHRISTOPHER JANOPOLIS, by personal service at his place of residence, 5319 LAKE WILSON RD, ELM CITY, NC 27822-8358.

Pursuant to Rule 196 of the Texas Rules of Civil Procedure, Plaintiffs request that the above-named Defendant, CHRISTOPHER JANOPOLIS (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in the following requests for production.

Respectfully submitted,

**LAW OFFICE OF MYNOR E. RODRIGUEZ, P.C.**

*/s/ Mynor "Eddie" Rodriguez*
Mynor "Eddie" Rodriguez
State Bar No. 24037381
1300 McGowen, Suite 280
Houston, TX 77004
(832) 779-1081 (Office)
(832) 553-7420 (Facsimile)
mrodriguez@rodrigueztrialfirm.com

**ATTORNEYS FOR PLAINTIFFS**

Page 1 of 16

## INSTRUCTIONS

1.  Answer each request for documents separately by listing the documents and by describing them as defined below. If documents are numbered for production, in each response provide both the information that identifies the document and the document's number(s). There is a duty to supplement any answer made to the request for documents when the original answer is no longer true, or was incorrect or incomplete when made.

2.  For each document or other requested information that you assert is privileged or is not discoverable, identify that document or other requested information. State the specific grounds for the claim of privilege or other applicable ground for exclusion. Also, for each document you claim is not discoverable, state the date of the document, the name, job title, and address of the person who prepared it; the name, address, and job title of the person to whom it was addressed, circulated, or who saw it; the name, job title, and address of the person now in possession of the document; a description of the subject matter of the document; the document's present location; and the custodian for the document.

3.  For a document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence or could no longer be located, and the reasons for the disappearance. Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

4.  The documents produced pursuant to the following requests for documents are considered to be authentic unless a proper objection is asserted as to the documents' authenticity under the Texas Rules of Civil Procedure.

5.  Pursuant to Rule 196.4, you are requested to product electronic or magnetic data responsive to the Request for Production below in native file format, including email, instant message and PDF forms of the documents. Native file format is a file saved in the format as designated by the original application used to create it.

## DEFINITIONS

The following definitions shall have the following meanings, unless the context of the requests for documents require otherwise:

1.  "PLAINTIFFS," means Carlos Durham and Deborah Durham, along with their family members, agents, representatives, and all other persons acting in concert with them, or under their control, whether directly or indirectly, including any attorney.

2.  "DEFENDANT," means CHRISTOPHER JANOPOLIS, along with his agents, representatives, and all other persons acting in concert with him, or under his control, whether directly or indirectly, including any attorney.

3.  "DOCUMENT," "DOCUMENTS" and "DOCUMENTATION" are used in their broadest sense and mean all written, printed, typed, recorded, or graphic matter of every kind and description, source and authorship, both originals and all nonidentical copies thereof, and all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative or private entity or person.  Without limiting the foregoing, the terms "document" and "documents" include handwritten, typewritten, printed, photocopied, photographic or recorded, stenographic, computer-generated, computer-installed, or electronically stored matters, however and by whomever produced, prepared, reproduced, disseminated or made, and includes communications in words, symbols, pictures, sound recordings, films, tapes and information stored in, or accessible through, computer of other information storage or retrieval systems, together with the codes and/or programming instruction and other materials necessary to understand and use such systems.  For purposes of illustration and no limitation, "documents" includes: accounts; advertising; affidavits; agendas; agreements; analyses; analytical records; announcements; appointment books; appraisals; articles; bills; statements and other records of obligations and expenditures; books; brochures; bulletins; calendars; checks; cancelled checks, vouchers, receipts and other records of payments; charts, drawings; check registers; checkbooks; circulars; collateral files and contents; communications; compilations; confirmations; consultant's reports; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; data compilations from which information can be obtained (including matter used in data processing); deeds of trust; deposit slips, diaries, diary entries; drafts; envelopes; folders or similar containers; expense reports; facsimile transmissions; files; film tape; financial statements; forecasts; graphs; guaranty agreements; instructions, invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; letters of credit; lists; log books; logs, notes or memoranda of telephonic or face-to-face conversations; manuals; maps, marginal notations; memoranda of all kinds to and from any persons, agencies or entities; messages; microfilm; microfiche; minutes; minute books; notes; notebooks; notices; pamphlets; parts lists; papers; photographs, press releases; printed

matter (including published books, articles, speeches and newspaper clippings); printouts; programs; punch cards; purchase orders; receipts; recommendations; records; records of administrative, technical and financial actions taken or recommenced; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; sell orders; sound recordings; specifications; speeches; statement of bank accounts; statements, interviews; statistical data; statistical statements, stock transfer ledger; studies; surveys; tables; tabulations; tape or disk recordings; tape programs; technical and engineering reports, evaluations; advice; recommendations; commentaries; conclusions; studies; test plans; manuals; procedures; data; reports; results and conclusions; summaries, minutes, notes and other records and recording of any conference, meetings, visits, negotiations, statement, interviews or telephone conversations; other summaries; telegrams; teletypes, telexes and other communications sent or received; time records; telephone bills or records; trade letters; transcripts of hearings; transcripts of testimony; UCC instruments; video recordings; visitor records; vouchers; work assignments; work sheets; work papers; and all other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored or electronically stored matter, however or by whomever produced, prepared, reproduced, disseminated or made, the contents of which relate to, discuss, consider or otherwise refer to the subject matter of the particular discovery requested.

4.    "PERSON" includes individuals, associates of individuals, partnerships, joint-stock companies, corporations, or trustee or receiver of an individual, association of individuals, joint-stock company or corporation, and any other type of entity or institution, whether formed for business or any other purposes.

5.    "PARTY" shall mean any party whomsoever to the dispute, and includes each party's agents, employees, attorneys, representatives, predecessors, successors, affiliates, partners, officers, directors, principals and any and all other persons acting or purporting to act on the party's behalf or under the party's control. For purposes of the duty to supplement, the term also includes entities, which become parties subsequent to the date this request for documents is served.

6.    "RELATING TO" and or "RELATES TO" means in whole or in part constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, or dealing with, or in any way pertaining to.

7.    "CONCERNING" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, and constituting.

8.    "COMMUNICATION" means the transmission, sending and/or receipt of information of any kind by or through any means, including but not limited to speech, writings, language machine (foreign or otherwise), computer electronics of any kind (e.g., email), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, "floppy disks", CD-ROM disks, sound, radio or video signals, telecommunication, telephone, teletype, facsimile, telegraph, microfilm, microfiche, photographic film of any type, and

other media of any kind. The term "communication" also includes, without limitations all "records" (as hereafter defined) and all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, and press, publicity or trade releases.

9.  "RECORD(S)" means all documents and writings of any kind, and all communications (as defined above) which are stored or retrievable or recorded in any manner, including originals and all non-identical copies whether different from the originals by notation made on such copies or otherwise, all drafts, alterations, modifications, changes and amendments, graphic or any electronic or mechanical records or representation of any kind, created during the period 2000 to present. Any electronic records or computer data which may exist shall be produced in its native file format. Native file format is a file saved in the format as designated by the original application used to create it. Such electronic data should be provided on one of the following media: USB flash drive, CD-ROM or DVD-ROM.

10. "Electronic or magnetic data" means electronic information that is stored in a medium from which it can be retrieved and examined. The term refers to the original (or identical duplicate when the original is not available) and any other copies of the data that may have attached comments, notes, marks, or highlighting of any kind. Electronic or magnetic data includes, but is not limited to, the following: computer programs; operating systems; computer activity logs; programming notes or instructions; e-mail receipts, messages, or transmissions; output resulting from the use of any software program, including word-processing documents, spreadsheets, database files, charts, graphs, and outlines; metadata; TIFF and PDF files; batch files; deleted files; temporary files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; adjuster log(s), ; and any miscellaneous files or file fragments. Electronic or magnetic data includes any items stored on magnetic, optical, digital, or other electronic-storage media, such as hard drives, floppy disks, CD-ROMs, DVDs, tapes, smart cards, integrated-circuit cards (e.g., SIM cards), removable media (e.g., Zip drives, Jaz cartridges, flash drives, removable/portable hard drives and backup drives), microfiche, punched cards. Electronic or magnetic data also includes the file, folder, tabs, containers, and labels attached to or associated with any physical storage device with each original or copy.

11. "DATE" means the exact date, month, and year, if ascertainable, or, if not, the best available approximation.

12. "DESCRIBE" and "IDENTIFY", when referring to a person, require statements of the following:

    a.   The full name.
    b.   The present or last known residential address.
    c.   The present or last known residential and office telephone numbers.
    d.   The present occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular request.

e.  In the case of any person other than an individual, identify the officer, employee, or agent most closely connected with the subject matter of the request and identify the officer who is responsible for supervising that officer or employee.

13.  "DESCRIBE" and "IDENTIFY", when referring to a document, are defined to require that you state the following:

a.  The nature (e.g., letter, handwritten note) of the document
b.  The title or heading that appears on the document
c.  The date of the document and the date of each addendum supplement, or other addition or change.
d.  The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.
e.  The present location of the document, and the name, address, position, or title, and telephone number of the person or person having custody of the document.

14.  The words "AND" and "OR" should be construed either conjunctively or disjunctively as required by the context to bring within the scope of these discovery requests any answer, response or document that might be deemed outside its scope by another construction.

15.  "PERTAINS TO" or "PERTAINING TO" means relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, reflects, refutes, disputes, rebuts, controverts or contradicts.

16.  The term "LAWSUIT" means Cause No. _____, *CARLOS DURHAM AND DEBORAH DURHAM VS. ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY, CHRISTOPHER JANOPOLIS, JOHN BUCKWALTER AND JOSEPH GRIFFITH,* In the District Court of Harris County, Texas, ___th Judicial District

17.  "RESIDENCE" and/or "PROPERTY" refers to the property located at 24703 Kennington Way, Spring, TX 77389.

## PLAINTIFFS' REQUESTS FOR PRODUCTION TO DEFENDANT
## CHRISTOPHER JANOPOLIS

1.   The insurance policy in effect on the date of Plaintiffs' claim(s) made the basis of this lawsuit.

   RESPONSE:

2.   The entire claims investigation files generated and/or maintained by Defendant in the ordinary course of business pertaining to Plaintiffs' claim(s) making the basis of this lawsuit.

   RESPONSE:

3.   All training and educational materials which instruct claim adjusters, claim handlers, claim representatives and independent adjusters, including Defendant in handling claims for property damage under residential and/or homeowners insurance policies in Texas. This request is limited to the last five (5) years.

   RESPONSE:

4.   All training and educational materials which instruct claim adjusters, claim handlers, claim representatives and independent adjusters, including Defendant in handling claims for hail damage, water damage, roof damage and/or wind damage under residential and/or homeowners insurance policies in Texas. This request is limited to the last five (5) years.

   RESPONSE:

5.   All procedure or policy manuals or guides meant to guide and assist claim adjusters, claim handlers, claim representatives and independent adjusters, including Defendant in handling claims for property damage, including the criteria for and the process for evaluating whether coverage exists under residential and/or homeowners insurance policies in Texas. This request is limited to the last five (5) years.

   RESPONSE:

6.      All procedure or policy manuals or guides meant to guide and assist claim adjusters, claim handlers, claim representatives and independent adjusters, including Defendant in handling claims for hail damage, water damage, roof damage and/or wind damage, including the criteria for and the process for evaluating whether coverage exists under residential and/or homeowners insurance policies in Texas. This request is limited to the last five (5) years.

RESPONSE:

7.      All communications and documents, including electronic (emails, text messages, instant messages, etc.), between Defendant and Plaintiffs regarding Plaintiffs' claim(s).

RESPONSE:

8.      All communications and documents, including electronic (emails, text messages, instant messages, etc.), between Defendant and any third party regarding Plaintiffs' claim(s).

RESPONSE:

9.      All communications and documents, including electronic (emails, text messages, instant messages, etc.), between Defendant and any other defendant(s) regarding Plaintiffs' claim(s).

RESPONSE:

10.     All communications and documents, including electronic (emails, text messages, instant messages, etc.), Defendant sent to any other defendant(s) in this cause of action regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit, after Plaintiffs made their claim(s) for coverage.

RESPONSE:

11.     All photographs, diagrams, drawings, videos or other graphic depictions of Plaintiffs or Plaintiffs' Property.

RESPONSE:

12.     Any and all documents, including but not limited to emails, text messages, instant messages, reports, data, notes and summaries regarding Plaintiffs' claim(s) made the basis of this lawsuit.

RESPONSE:

13.    All reports and other documents from governmental agencies or offices regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit or containing officially kept information regarding Plaintiffs, Plaintiffs' property or Plaintiffs' claim made the basis of this lawsuit.

RESPONSE:

14.    Any and all claim files and claim reports, including but not limited to notes, log notes, activity logs, daily logs, field notes, estimates, emails, text messages, instant messages, payment documents, photos, videos, summaries, and any other claim data or documents regarding all residential and/or homeowners insurance claims made by Plaintiffs under their residential and/or homeowners insurance policies.

RESPONSE:

15.    All documents regarding testing or sampling on or at Plaintiffs' Property made the basis of this Lawsuit.

RESPONSE:

16.    All photographs and videos regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this Lawsuit.

RESPONSE:

17.    All documents, videos, photos, drawings or other graphical depictions of any inspection of Plaintiffs' property or relating to any inspection of Plaintiffs' Property.

RESPONSE:

18.    Any and all records Defendant received, including those obtained by way of deposition upon written questions, regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit.

RESPONSE:

19.     Any and all non-privileged records or documents Defendant has reviewed and/or obtained regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit.

        RESPONSE:

20.     Any and all claims files Defendant has reviewed and/or obtained regarding Plaintiffs' Property made the basis of this lawsuit.

        RESPONSE:

21.     Any and all records or documents Defendant has reviewed and/or obtained from third parties (excluding testifying experts) regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit.

        RESPONSE:

22.     All bulletins or other communications received from the Texas Department of Insurance, the Texas Insurance Commissioner and/or their employees, agents or representatives or from ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY and/or any of its employees, agents or representatives regarding practices in the handling of claims for property damage, hail damage, water damage, roof damage and wind damage under residential and/or homeowners insurance policies in Texas.  This request is limited to the last five (5) years.

        RESPONSE:

23.     All materials meant to instruct and guide adjusters, including Defendant under Texas law and/or under ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY's company policy with regard to unfair claims settlement practices, unfair claims handling practices, standards to be met in adjusting or handling first party insurance claims, or avoiding charges of bad faith in Texas.  This request is limited to the last five (5) years.

        RESPONSE:

24.     All materials meant to instruct and guide Defendant, including Defendant under Texas law and/or under ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY's company policy with regard to understanding and complying with the Texas Insurance Code §541.060 and/or Article 21.21.  This request is specifically limited to the last five (5) years.

RESPONSE:

25.     Any and all materials, documents, statements and/or files that demonstrate Defendant's income from adjusting residential or commercial property claims. This request is limited to the last five (5) years.

RESPONSE:

26.     Any and all materials, documents, statements and/or files that demonstrate Defendant's net income from ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY. This request is limited to the last five (5) years.

RESPONSE:

27.     Any and all materials, documents, statements and/or files that reflect complaints and/or lawsuits filed by insureds against Defendant regarding the handling, review and/or adjusting of residential and/or homeowners insurance claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

28.     Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents, if any, used or relied upon by Defendant to conduct any training, seminars and/or classes regarding the adjusting and/or handling of residential insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

29.     Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents used or relied upon by Defendant in the adjusting and/or handling of residential and/or homeowners insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

30. Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents issued by Defendant ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY and received and/or relied upon by Defendant pertaining to the adjusting and/or handling of residential insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims, and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

31. Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents issued by any third party to Defendant or received by Defendant pertaining to the adjusting and/or handling of residential insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

32. Any and all materials, handouts, manuals, outlines, articles, and/or documents distributed and/or disbursed to Defendant in connection with attendance at seminars and/or continuing education classes regarding the adjusting and/or handling of residential insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims, and/or wind damage claims in Texas, within the last five (5) years.

RESPONSE:

33. Any and all materials reflecting Defendant's attendance at seminars and/or continuing education classes regarding the adjusting and/or handling of residential and/or homeowners insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims, and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

34. Any and all materials, documents, files, and/or reports sent to Defendant by ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY regarding Plaintiffs' claim(s).

RESPONSE:

35.   Any and all materials, documents, files, and/or reports sent from Defendant to ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY regarding Plaintiffs' claim(s).

RESPONSE:

36.   Any and all documents and materials, including instructional, "how to" or teaching manuals pertaining to any computer program Defendant used or relied upon to perform property damage estimates on residential and/or homeowners insurance claims in Texas, including any materials relating to the computer program used to adjust Plaintiffs' claim(s).  This request is limited to the last five (5) years.

RESPONSE:

37.   Any and all documents, including training, educational and instructional materials, "how to" manuals or teaching manuals provided to or received by Defendant from any source in the use of computer programs to perform property damage estimates on residential and/or homeowners insurance claims in Texas, including the computer program used to adjust Plaintiffs' claim(s).  This request is limited to the last five (5) years.

RESPONSE:

38.   Any and all pricing studies and/or pricing guides and supporting documents pertaining to the prices of materials and/or labor to repair property damage within Texas, including the Houston, Texas Gulf Coast and Harris County areas from January 1, 2015 to present.

RESPONSE:

39.   Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents that have been distributed by and/or disbursed to Defendant regarding the price estimates of contractors and changes of those estimates within different geographical areas of the State of Texas.  This request is limited to the last five (5) years.

RESPONSE:

40.   Any and all activity logs or daily logs relating to Plaintiffs' claim made the basis of this lawsuit.

RESPONSE:

41.   Any and all documents reflecting guidelines, procedures, or policies that serve as criteria for evaluating whether claims are covered or excluded by any policy provisions Defendant contends apply to Plaintiffs' claim(s).

RESPONSE:

42.   Any and all records reflecting payment to Plaintiffs concerning Plaintiffs' claim(s) made the basis of this lawsuit.

RESPONSE:

43.   Any and all documents, including employment agreements or contracts, relating to or reflecting Defendant's association or relationship with any adjusting company.

RESPONSE:

44.   Any and all documents, including employment agreements or contracts, relating to or reflecting Defendant's association or relationship with Defendant ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY.

RESPONSE:

45.   Any and all documents, including but not limited to contracts, fee schedules, rules, policies, procedures, guidelines and/or instructions exchanged between Defendant and Defendant ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY.

RESPONSE:

46.   Any and all certifications and licenses held by Defendant, including those pertaining to adjusting property claims.

RESPONSE:

47.   Any and all documents relating to the assignment of Plaintiffs' claim(s) to Defendant.

RESPONSE:

48. Any and all documents, photographs or other materials exchanged between Defendant and Plaintiffs.

    RESPONSE:

49. Any and all documents exchanged between Defendant, Plaintiffs and any other defendant and/or any other entities with whom Defendant worked or communicated regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit.

    RESPONSE:

50. All physical or tangible items and/or evidence obtained by or on behalf of Defendant from Plaintiffs' Property made the basis of this lawsuit.

    RESPONSE:

51. Any and all indemnity agreements between Defendant and any other person, firm, corporation or entity against which a claim of indemnification might be brought because of this lawsuit or the facts in this lawsuit.

    RESPONSE:

52. All e-mails, text messages and instant messages regarding the investigation, adjusting and/or handling of Plaintiffs' claim(s) made the basis of this lawsuit.

    RESPONSE:

53. All e-mails, text messages and instant messages between Defendant and other adjusters, supervisors, officers, and/or executives regarding educational programs or changes in the educational programs relating to the handling of property damage claims, hail damage claims, water damage claims, roof damage claims, and/or wind damage claims. This is limited to the past five (5) years.

    RESPONSE:

54. True and complete copies of all billing records, time sheets and/or documents used to justify Defendant's billing regarding Plaintiffs' claim(s) made the basis of this lawsuit.

    RESPONSE:

55. A list of all claims adjusted by you for Defendant ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY from January 1, 2015 to present.

RESPONSE:

56. Copies of the front and back of each negotiated check made payable solely or co-payable to Plaintiffs regarding the insurance claim made the basis of this lawsuit.

RESPONSE:

57. Affidavits or depositions given by you in other cases involving the same or similar allegations as in this case. This is limited to the past five (5) years.

RESPONSE:

58. Any and all reports, documents or correspondence containing lists of lawsuits filed against Defendant pertaining to property damage, hail damage, water damage, roof damage and/or wind damage and/or handling of same from 2008 through the present.

RESPONSE:

59. Any and all materials, documents, files, invoices, and/or reports received from any and all contractors, roofing companies and/or roofing manufacturers (excluding testifying experts) retained to investigate, inspect, and/or evaluate Plaintiffs' claim(s) made the basis of this lawsuit.

RESPONSE:

60. If you are withholding documents based upon the assertion of a privilege, please produce a privilege log, detailing with reasonable particularity a description of the documents withheld, the number of documents, and the privilege which Defendant claims properly precludes the information from discovery.

RESPONSE:

**"EXHIBIT B-2"**

CAUSE NO. _____

| | | |
|---|---|---|
| CARLOS DURHAM AND DEBORAH DURHAM, | § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY, CHRISTOPHER JANOPOLIS, JOHN BUCKWALTER AND JOSEPH GRIFFITH, | § § § § § | |
| *Defendants.* | § | ____ JUDICIAL DISTRICT |

## PLAINTIFFS' REQUESTS FOR PRODUCTION TO DEFENDANT JOHN BUCKWALTER

TO:   DEFENDANT JOHN BUCKWALTER, by personal service at his place of residence, 2300 BROADMOOR DRIVE, APT 50, BRYAN, TX 77802-2638.

Pursuant to Rule 196 of the Texas Rules of Civil Procedure, Plaintiffs request that the above-named Defendant, JOHN BUCKWALTER (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in the following requests for production.

Respectfully submitted,

**LAW OFFICE OF MYNOR E. RODRIGUEZ, P.C.**

*/s/ Mynor "Eddie" Rodriguez*
Mynor "Eddie" Rodriguez
State Bar No. 24037381
1300 McGowen, Suite 280
Houston, TX 77004
(832) 779-1081 (Office)
(832) 553-7420 (Facsimile)
mrodriguez@rodrigueztrialfirm.com

**ATTORNEYS FOR PLAINTIFFS**

## INSTRUCTIONS

1.  Answer each request for documents separately by listing the documents and by describing them as defined below. If documents are numbered for production, in each response provide both the information that identifies the document and the document's number(s). There is a duty to supplement any answer made to the request for documents when the original answer is no longer true, or was incorrect or incomplete when made.

2.  For each document or other requested information that you assert is privileged or is not discoverable, identify that document or other requested information. State the specific grounds for the claim of privilege or other applicable ground for exclusion. Also, for each document you claim is not discoverable, state the date of the document, the name, job title, and address of the person who prepared it; the name, address, and job title of the person to whom it was addressed, circulated, or who saw it; the name, job title, and address of the person now in possession of the document; a description of the subject matter of the document; the document's present location; and the custodian for the document.

3.  For a document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence or could no longer be located, and the reasons for the disappearance. Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

4.  The documents produced pursuant to the following requests for documents are considered to be authentic unless a proper objection is asserted as to the documents' authenticity under the Texas Rules of Civil Procedure.

5.  Pursuant to Rule 196.4, you are requested to product electronic or magnetic data responsive to the Request for Production below in native file format, including email, instant message and PDF forms of the documents. Native file format is a file saved in the format as designated by the original application used to create it.

## DEFINITIONS

The following definitions shall have the following meanings, unless the context of the requests for documents require otherwise:

1.  "PLAINTIFFS," means Carlos Durham and Deborah Durham, along with their family members, agents, representatives, and all other persons acting in concert with them, or under their control, whether directly or indirectly, including any attorney.

2.  "DEFENDANT," means JOHN BUCKWALTER, along with his agents, representatives, and all other persons acting in concert with him, or under his control, whether directly or indirectly, including any attorney.

3.  "DOCUMENT," "DOCUMENTS" and "DOCUMENTATION" are used in their broadest sense and mean all written, printed, typed, recorded, or graphic matter of every kind and description, source and authorship, both originals and all nonidentical copies thereof, and all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative or private entity or person. Without limiting the foregoing, the terms "document" and "documents" include handwritten, typewritten, printed, photocopied, photographic or recorded, stenographic, computer-generated, computer-installed, or electronically stored matters, however and by whomever produced, prepared, reproduced, disseminated or made, and includes communications in words, symbols, pictures, sound recordings, films, tapes and information stored in, or accessible through, computer of other information storage or retrieval systems, together with the codes and/or programming instruction and other materials necessary to understand and use such systems. For purposes of illustration and no limitation, "documents" includes: accounts; advertising; affidavits; agendas; agreements; analyses; analytical records; announcements; appointment books; appraisals; articles; bills; statements and other records of obligations and expenditures; books; brochures; bulletins; calendars; checks; cancelled checks, vouchers, receipts and other records of payments; charts, drawings; check registers; checkbooks; circulars; collateral files and contents; communications; compilations; confirmations; consultant's reports; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; data compilations from which information can be obtained (including matter used in data processing); deeds of trust; deposit slips, diaries, diary entries; drafts; envelopes; folders or similar containers; expense reports; facsimile transmissions; files; film tape; financial statements; forecasts; graphs; guaranty agreements; instructions, invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; letters of credit; lists; log books; logs, notes or memoranda of telephonic or face-to-face conversations; manuals; maps, marginal notations; memoranda of all kinds to and from any persons, agencies or entities; messages; microfilm; microfiche; minutes; minute books; notes; notebooks; notices; pamphlets; parts lists; papers; photographs, press releases; printed

matter (including published books, articles, speeches and newspaper clippings); printouts; programs; punch cards; purchase orders; receipts; recommendations; records; records of administrative, technical and financial actions taken or recommenced; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; sell orders; sound recordings; specifications; speeches; statement of bank accounts; statements, interviews; statistical data; statistical statements, stock transfer ledger; studies; surveys; tables; tabulations; tape or disk recordings; tape programs; technical and engineering reports, evaluations; advice; recommendations; commentaries; conclusions; studies; test plans; manuals; procedures; data; reports; results and conclusions; summaries, minutes, notes and other records and recording of any conference, meetings, visits, negotiations, statement, interviews or telephone conversations; other summaries; telegrams; teletypes; telexes and other communications sent or received; time records; telephone bills or records; trade letters; transcripts of hearings; transcripts of testimony; UCC instruments; video recordings; visitor records; vouchers; work assignments; work sheets; work papers; and all other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored or electronically stored matter, however or by whomever produced, prepared, reproduced, disseminated or made, the contents of which relate to, discuss, consider or otherwise refer to the subject matter of the particular discovery requested.

4.    "PERSON" includes individuals, associates of individuals, partnerships, joint-stock companies, corporations, or trustee or receiver of an individual, association of individuals, joint-stock company or corporation, and any other type of entity or institution, whether formed for business or any other purposes.

5.    "PARTY" shall mean any party whomsoever to the dispute, and includes each party's agents, employees, attorneys, representatives, predecessors, successors, affiliates, partners, officers, directors, principals and any and all other persons acting or purporting to act on the party's behalf or under the party's control.  For purposes of the duty to supplement, the term also includes entities, which become parties subsequent to the date this request for documents is served.

6.    "RELATING TO" and or "RELATES TO" means in whole or in part constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, or dealing with, or in any way pertaining to.

7.    "CONCERNING" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, and constituting.

8.    "COMMUNICATION" means the transmission, sending and/or receipt of information of any kind by or through any means, including but not limited to speech, writings, language machine (foreign or otherwise), computer electronics of any kind (e.g., email), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, "floppy disks", CD-ROM disks, sound, radio or video signals, telecommunication, telephone, teletype, facsimile, telegraph, microfilm, microfiche, photographic film of any type, and

other media of any kind. The term "communication" also includes, without limitations all "records" (as hereafter defined) and all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, and press, publicity or trade releases.

9. "RECORD(S)" means all documents and writings of any kind, and all communications (as defined above) which are stored or retrievable or recorded in any manner, including originals and all non-identical copies whether different from the originals by notation made on such copies or otherwise, all drafts, alterations, modifications, changes and amendments, graphic or any electronic or mechanical records or representation of any kind, created during the period 2000 to present. Any electronic records or computer data which may exist shall be produced in its native file format. Native file format is a file saved in the format as designated by the original application used to create it. Such electronic data should be provided on one of the following media: USB flash drive, CD-ROM or DVD-ROM.

10. "Electronic or magnetic data" means electronic information that is stored in a medium from which it can be retrieved and examined. The term refers to the original (or identical duplicate when the original is not available) and any other copies of the data that may have attached comments, notes, marks, or highlighting of any kind. Electronic or magnetic data includes, but is not limited to, the following: computer programs; operating systems; computer activity logs; programming notes or instructions; e-mail receipts, messages, or transmissions; output resulting from the use of any software program, including word-processing documents, spreadsheets, database files, charts, graphs, and outlines; metadata; TIFF and PDF files; batch files; deleted files; temporary files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; adjuster log(s), ; and any miscellaneous files or file fragments. Electronic or magnetic data includes any items stored on magnetic, optical, digital, or other electronic-storage media, such as hard drives, floppy disks, CD-ROMs, DVDs, tapes, smart cards, integrated-circuit cards (e.g., SIM cards), removable media (e.g., Zip drives, Jaz cartridges, flash drives, removable/portable hard drives and backup drives), microfiche, punched cards. Electronic or magnetic data also includes the file, folder, tabs, containers, and labels attached to or associated with any physical storage device with each original or copy.

11. "DATE" means the exact date, month, and year, if ascertainable, or, if not, the best available approximation.

12. "DESCRIBE" and "IDENTIFY", when referring to a person, require statements of the following:

    a.    The full name.
    b.    The present or last known residential address.
    c.    The present or last known residential and office telephone numbers.
    d.    The present occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular request.

e.     In the case of any person other than an individual, identify the officer, employee, or agent most closely connected with the subject matter of the request and identify the officer who is responsible for supervising that officer or employee.

13.     "DESCRIBE" and "IDENTIFY", when referring to a document, are defined to require that you state the following:

a.     The nature (e.g., letter, handwritten note) of the document
b.     The title or heading that appears on the document
c.     The date of the document and the date of each addendum supplement, or other addition or change.
d.     The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.
e.     The present location of the document, and the name, address, position, or title, and telephone number of the person or person having custody of the document.

14.     The words "AND" and "OR" should be construed either conjunctively or disjunctively as required by the context to bring within the scope of these discovery requests any answer, response or document that might be deemed outside its scope by another construction.

15.     "PERTAINS TO" or "PERTAINING TO" means relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, reflects, refutes, disputes, rebuts, controverts or contradicts.

16.     The term "LAWSUIT" means Cause No. _____, *CARLOS DURHAM AND DEBORAH DURHAM VS. ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY, CHRISTOPHER JANOPOLIS, JOHN BUCKWALTER AND JOSEPH GRIFFITH,* In the District Court of Harris County, Texas, ___th Judicial District

17.     "RESIDENCE" and/or "PROPERTY" refers to the property located at 24703 Kennington Way, Spring, TX 77389.

## PLAINTIFFS' REQUESTS FOR PRODUCTION TO DEFENDANT
## JOHN BUCKWALTER

1.      The insurance policy in effect on the date of Plaintiffs' claim(s) made the basis of this lawsuit.

RESPONSE:


2.      The entire claims investigation files generated and/or maintained by Defendant in the ordinary course of business pertaining to Plaintiffs' claim(s) making the basis of this lawsuit.

RESPONSE:


3.      All training and educational materials which instruct claim adjusters, claim handlers, claim representatives and independent adjusters, including Defendant in handling claims for property damage under residential and/or homeowners insurance policies in Texas. This request is limited to the last five (5) years.

RESPONSE:


4.      All training and educational materials which instruct claim adjusters, claim handlers, claim representatives and independent adjusters, including Defendant in handling claims for hail damage, water damage, roof damage and/or wind damage under residential and/or homeowners insurance policies in Texas.  This request is limited to the last five (5) years.

RESPONSE:


5.      All procedure or policy manuals or guides meant to guide and assist claim adjusters, claim handlers, claim representatives and independent adjusters, including Defendant in handling claims for property damage, including the criteria for and the process for evaluating whether coverage exists under residential and/or homeowners insurance policies in Texas.  This request is limited to the last five (5) years.

RESPONSE:

6.      All procedure or policy manuals or guides meant to guide and assist claim adjusters, claim handlers, claim representatives and independent adjusters, including Defendant in handling claims for hail damage, water damage, roof damage and/or wind damage, including the criteria for and the process for evaluating whether coverage exists under residential and/or homeowners insurance policies in Texas. This request is limited to the last five (5) years.

        RESPONSE:

7.      All communications and documents, including electronic (emails, text messages, instant messages, etc.), between Defendant and Plaintiffs regarding Plaintiffs' claim(s).

        RESPONSE:

8.      All communications and documents, including electronic (emails, text messages, instant messages, etc.), between Defendant and any third party regarding Plaintiffs' claim(s).

        RESPONSE:

9.      All communications and documents, including electronic (emails, text messages, instant messages, etc.), between Defendant and any other defendant(s) regarding Plaintiffs' claim(s).

        RESPONSE:

10.     All communications and documents, including electronic (emails, text messages, instant messages, etc.), Defendant sent to any other defendant(s) in this cause of action regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit, after Plaintiffs made their claim(s) for coverage.

        RESPONSE:

11.     All photographs, diagrams, drawings, videos or other graphic depictions of Plaintiffs or Plaintiffs' Property.

        RESPONSE:

12.     Any and all documents, including but not limited to emails, text messages, instant messages, reports, data, notes and summaries regarding Plaintiffs' claim(s) made the basis of this lawsuit.

RESPONSE:

13. All reports and other documents from governmental agencies or offices regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit or containing officially kept information regarding Plaintiffs, Plaintiffs' property or Plaintiffs' claim made the basis of this lawsuit.

RESPONSE:

14. Any and all claim files and claim reports, including but not limited to notes, log notes, activity logs, daily logs, field notes, estimates, emails, text messages, instant messages, payment documents, photos, videos, summaries, and any other claim data or documents regarding all residential and/or homeowners insurance claims made by Plaintiffs under their residential and/or homeowners insurance policies.

RESPONSE:

15. All documents regarding testing or sampling on or at Plaintiffs' Property made the basis of this Lawsuit.

RESPONSE:

16. All photographs and videos regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this Lawsuit.

RESPONSE:

17. All documents, videos, photos, drawings or other graphical depictions of any inspection of Plaintiffs' property or relating to any inspection of Plaintiffs' Property.

RESPONSE:

18. Any and all records Defendant received, including those obtained by way of deposition upon written questions, regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit.

RESPONSE:

19.  Any and all non-privileged records or documents Defendant has reviewed and/or obtained regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit.

RESPONSE:

20.  Any and all claims files Defendant has reviewed and/or obtained regarding Plaintiffs' Property made the basis of this lawsuit.

RESPONSE:

21.  Any and all records or documents Defendant has reviewed and/or obtained from third parties (excluding testifying experts) regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit.

RESPONSE:

22.  All bulletins or other communications received from the Texas Department of Insurance, the Texas Insurance Commissioner and/or their employees, agents or representatives or from ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY and/or any of its employees, agents or representatives regarding practices in the handling of claims for property damage, hail damage, water damage, roof damage and wind damage under residential and/or homeowners insurance policies in Texas. This request is limited to the last five (5) years.

RESPONSE:

23.  All materials meant to instruct and guide adjusters, including Defendant under Texas law and/or under ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY's company policy with regard to unfair claims settlement practices, unfair claims handling practices, standards to be met in adjusting or handling first party insurance claims, or avoiding charges of bad faith in Texas. This request is limited to the last five (5) years.

RESPONSE:

24.  All materials meant to instruct and guide Defendant, including Defendant under Texas law and/or under ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY's company policy with regard to understanding and complying with the Texas Insurance Code §541.060 and/or Article 21.21. This request is specifically limited to the last five (5) years.

RESPONSE:

25.     Any and all materials, documents, statements and/or files that demonstrate Defendant's income from adjusting residential or commercial property claims.  This request is limited to the last five (5) years.

RESPONSE:

26.     Any and all materials, documents, statements and/or files that demonstrate Defendant's net income from ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY. This request is limited to the last five (5) years.

RESPONSE:

27.     Any and all materials, documents, statements and/or files that reflect complaints and/or lawsuits filed by insureds against Defendant regarding the handling, review and/or adjusting of residential and/or homeowners insurance claims in Texas.  This request is limited to the last five (5) years.

RESPONSE:

28.     Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents, if any, used or relied upon by Defendant to conduct any training, seminars and/or classes regarding the adjusting and/or handling of residential insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

29.     Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents used or relied upon by Defendant in the adjusting and/or handling of residential and/or homeowners insurance claims, commercial insurance claims, property damage claims, hail damage claims,  water damage claims, roof damage claims and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

30.     Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents issued by Defendant ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY and received and/or relied upon by Defendant pertaining to the adjusting and/or handling of residential insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims, and/or wind damage claims in Texas.  This request is limited to the last five (5) years.

        RESPONSE:


31.     Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents issued by any third party to Defendant or received by Defendant pertaining to the adjusting and/or handling of residential insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims and/or wind damage claims in Texas.  This request is limited to the last five (5) years.

        RESPONSE:


32.     Any and all materials, handouts, manuals, outlines, articles, and/or documents distributed and/or disbursed to Defendant in connection with attendance at seminars and/or continuing education classes regarding the adjusting and/or handling of residential insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims, and/or wind damage claims in Texas, within the last five (5) years.

        RESPONSE:


33.     Any and all materials reflecting Defendant's attendance at seminars and/or continuing education classes regarding the adjusting and/or handling of residential and/or homeowners insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims, and/or wind damage claims in Texas.  This request is limited to the last five (5) years.

        RESPONSE:


34.     Any and all materials, documents, files, and/or reports sent to Defendant by ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY regarding Plaintiffs' claim(s).

        RESPONSE:

35.     Any and all materials, documents, files, and/or reports sent from Defendant to ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY regarding Plaintiffs' claim(s).

RESPONSE:

36.     Any and all documents and materials, including instructional, "how to" or teaching manuals pertaining to any computer program Defendant used or relied upon to perform property damage estimates on residential and/or homeowners insurance claims in Texas, including any materials relating to the computer program used to adjust Plaintiffs' claim(s).  This request is limited to the last five (5) years.

RESPONSE:

37.     Any and all documents, including training, educational and instructional materials, "how to" manuals or teaching manuals provided to or received by Defendant from any source in the use of computer programs to perform property damage estimates on residential and/or homeowners insurance claims in Texas, including the computer program used to adjust Plaintiffs' claim(s).  This request is limited to the last five (5) years.

RESPONSE:

38.     Any and all pricing studies and/or pricing guides and supporting documents pertaining to the prices of materials and/or labor to repair property damage within Texas, including the Houston, Texas Gulf Coast and Harris County areas from January 1, 2015 to present.

RESPONSE:

39.     Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents that have been distributed by and/or disbursed to Defendant regarding the price estimates of contractors and changes of those estimates within different geographical areas of the State of Texas.  This request is limited to the last five (5) years.

RESPONSE:

40.     Any and all activity logs or daily logs relating to Plaintiffs' claim made the basis of this lawsuit.

RESPONSE:

41.     Any and all documents reflecting guidelines, procedures, or policies that serve as criteria for evaluating whether claims are covered or excluded by any policy provisions Defendant contends apply to Plaintiffs' claim(s).

        RESPONSE:

42.     Any and all records reflecting payment to Plaintiffs concerning Plaintiffs' claim(s) made the basis of this lawsuit.

        RESPONSE:

43.     Any and all documents, including employment agreements or contracts, relating to or reflecting Defendant's association or relationship with any adjusting company.

        RESPONSE:

44.     Any and all documents, including employment agreements or contracts, relating to or reflecting Defendant's association or relationship with Defendant ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY.

        RESPONSE:

45.     Any and all documents, including but not limited to contracts, fee schedules, rules, policies, procedures, guidelines and/or instructions exchanged between Defendant and Defendant ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY.

        RESPONSE:

46.     Any and all certifications and licenses held by Defendant, including those pertaining to adjusting property claims.

        RESPONSE:

47.     Any and all documents relating to the assignment of Plaintiffs' claim(s) to Defendant.

        RESPONSE:

48. Any and all documents, photographs or other materials exchanged between Defendant and Plaintiffs.

    RESPONSE:

49. Any and all documents exchanged between Defendant, Plaintiffs and any other defendant and/or any other entities with whom Defendant worked or communicated regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit.

    RESPONSE:

50. All physical or tangible items and/or evidence obtained by or on behalf of Defendant from Plaintiffs' Property made the basis of this lawsuit.

    RESPONSE:

51. Any and all indemnity agreements between Defendant and any other person, firm, corporation or entity against which a claim of indemnification might be brought because of this lawsuit or the facts in this lawsuit.

    RESPONSE:

52. All e-mails, text messages and instant messages regarding the investigation, adjusting and/or handling of Plaintiffs' claim(s) made the basis of this lawsuit.

    RESPONSE:

53. All e-mails, text messages and instant messages between Defendant and other adjusters, supervisors, officers, and/or executives regarding educational programs or changes in the educational programs relating to the handling of property damage claims, hail damage claims, water damage claims, roof damage claims, and/or wind damage claims. This is limited to the past five (5) years.

    RESPONSE:

54. True and complete copies of all billing records, time sheets and/or documents used to justify Defendant's billing regarding Plaintiffs' claim(s) made the basis of this lawsuit.

    RESPONSE:

55. A list of all claims adjusted by you for Defendant ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY from January 1, 2015 to present.

RESPONSE:

56. Copies of the front and back of each negotiated check made payable solely or co-payable to Plaintiffs regarding the insurance claim made the basis of this lawsuit.

RESPONSE:

57. Affidavits or depositions given by you in other cases involving the same or similar allegations as in this case. This is limited to the past five (5) years.

RESPONSE:

58. Any and all reports, documents or correspondence containing lists of lawsuits filed against Defendant pertaining to property damage, hail damage, water damage, roof damage and/or wind damage and/or handling of same from 2008 through the present.

RESPONSE:

59. Any and all materials, documents, files, invoices, and/or reports received from any and all contractors, roofing companies and/or roofing manufacturers (excluding testifying experts) retained to investigate, inspect, and/or evaluate Plaintiffs' claim(s) made the basis of this lawsuit.

RESPONSE:

60. If you are withholding documents based upon the assertion of a privilege, please produce a privilege log, detailing with reasonable particularity a description of the documents withheld, the number of documents, and the privilege which Defendant claims properly precludes the information from discovery.

RESPONSE:

"EXHIBIT B-3"

CAUSE NO. _____

| | | |
|---|---|---|
| **CARLOS DURHAM AND DEBORAH DURHAM,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ALLSTATE VEHICLE & PROPERTY** | § | |
| **INSURANCE COMPANY,** | § | |
| **CHRISTOPHER JANOPOLIS, JOHN** | § | |
| **BUCKWALTER AND JOSEPH** | § | |
| **GRIFFITH,** | § | |
| *Defendants.* | § | **____ JUDICIAL DISTRICT** |

### PLAINTIFFS' REQUESTS FOR PRODUCTION TO DEFENDANT JOSEPH GRIFFITH

TO:  DEFENDANT JOSEPH GRIFFITH, by personal service at his place of residence, 720 SPRING LAKE DRIVE, DESTIN FL 32541-1967.

Pursuant to Rule 196 of the Texas Rules of Civil Procedure, Plaintiffs request that the above-named Defendant, JOSEPH GRIFFITH (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in the following requests for production.

Respectfully submitted,

**LAW OFFICE OF MYNOR E. RODRIGUEZ, P.C.**

*/s/ Mynor "Eddie" Rodriguez*
Mynor "Eddie" Rodriguez
State Bar No. 24037381
1300 McGowen, Suite 280
Houston, TX 77004
(832) 779-1081 (Office)
(832) 553-7420 (Facsimile)
mrodriguez@rodrigueztrialfirm.com

**ATTORNEYS FOR PLAINTIFFS**

## INSTRUCTIONS

1.  Answer each request for documents separately by listing the documents and by describing them as defined below. If documents are numbered for production, in each response provide both the information that identifies the document and the document's number(s). There is a duty to supplement any answer made to the request for documents when the original answer is no longer true, or was incorrect or incomplete when made.

2.  For each document or other requested information that you assert is privileged or is not discoverable, identify that document or other requested information. State the specific grounds for the claim of privilege or other applicable ground for exclusion. Also, for each document you claim is not discoverable, state the date of the document, the name, job title, and address of the person who prepared it; the name, address, and job title of the person to whom it was addressed, circulated, or who saw it; the name, job title, and address of the person now in possession of the document; a description of the subject matter of the document; the document's present location; and the custodian for the document.

3.  For a document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence or could no longer be located, and the reasons for the disappearance. Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

4.  The documents produced pursuant to the following requests for documents are considered to be authentic unless a proper objection is asserted as to the documents' authenticity under the Texas Rules of Civil Procedure.

5.  Pursuant to Rule 196.4, you are requested to product electronic or magnetic data responsive to the Request for Production below in native file format, including email, instant message and PDF forms of the documents. Native file format is a file saved in the format as designated by the original application used to create it.

# DEFINITIONS

The following definitions shall have the following meanings, unless the context of the requests for documents require otherwise:

1. "PLAINTIFFS," means Carlos Durham and Deborah Durham, along with their family members, agents, representatives, and all other persons acting in concert with them, or under their control, whether directly or indirectly, including any attorney.

2. "DEFENDANT," means JOSEPH GRIFFITH, along with his agents, representatives, and all other persons acting in concert with him, or under his control, whether directly or indirectly, including any attorney.

3. "DOCUMENT," "DOCUMENTS" and "DOCUMENTATION" are used in their broadest sense and mean all written, printed, typed, recorded, or graphic matter of every kind and description, source and authorship, both originals and all nonidentical copies thereof, and all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative or private entity or person. Without limiting the foregoing, the terms "document" and "documents" include handwritten, typewritten, printed, photocopied, photographic or recorded, stenographic, computer-generated, computer-installed, or electronically stored matters, however and by whomever produced, prepared, reproduced, disseminated or made, and includes communications in words, symbols, pictures, sound recordings, films, tapes and information stored in, or accessible through, computer of other information storage or retrieval systems, together with the codes and/or programming instruction and other materials necessary to understand and use such systems. For purposes of illustration and no limitation, "documents" includes: accounts; advertising; affidavits; agendas; agreements; analyses; analytical records; announcements; appointment books; appraisals; articles; bills; statements and other records of obligations and expenditures; books; brochures; bulletins; calendars; checks; cancelled checks, vouchers, receipts and other records of payments; charts, drawings; check registers; checkbooks; circulars; collateral files and contents; communications; compilations; confirmations; consultant's reports; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; data compilations from which information can be obtained (including matter used in data processing); deeds of trust; deposit slips, diaries, diary entries; drafts; envelopes; folders or similar containers; expense reports; facsimile transmissions; files; film tape; financial statements; forecasts; graphs; guaranty agreements; instructions, invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; letters of credit; lists; log books; logs, notes or memoranda of telephonic or face-to-face conversations; manuals; maps, marginal notations; memoranda of all kinds to and from any persons, agencies or entities; messages; microfilm; microfiche; minutes; minute books; notes; notebooks; notices; pamphlets; parts lists; papers; photographs, press releases; printed

matter (including published books, articles, speeches and newspaper clippings); printouts; programs; punch cards; purchase orders; receipts; recommendations; records; records of administrative, technical and financial actions taken or recommenced; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; sell orders; sound recordings; specifications; speeches; statement of bank accounts; statements, interviews; statistical data; statistical statements, stock transfer ledger; studies; surveys; tables; tabulations; tape or disk recordings; tape programs; technical and engineering reports, evaluations; advice; recommendations; commentaries; conclusions; studies; test plans; manuals; procedures; data; reports; results and conclusions; summaries, minutes, notes and other records and recording of any conference, meetings, visits, negotiations, statement, interviews or telephone conversations; other summaries; telegrams; teletypes, telexes and other communications sent or received; time records; telephone bills or records; trade letters; transcripts of hearings; transcripts of testimony; UCC instruments; video recordings; visitor records; vouchers; work assignments; work sheets; work papers; and all other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored or electronically stored matter, however or by whomever produced, prepared, reproduced, disseminated or made, the contents of which relate to, discuss, consider or otherwise refer to the subject matter of the particular discovery requested.

4.     "PERSON" includes individuals, associates of individuals, partnerships, joint-stock companies, corporations, or trustee or receiver of an individual, association of individuals, joint-stock company or corporation, and any other type of entity or institution, whether formed for business or any other purposes.

5.     "PARTY" shall mean any party whomsoever to the dispute, and includes each party's agents, employees, attorneys, representatives, predecessors, successors, affiliates, partners, officers, directors, principals and any and all other persons acting or purporting to act on the party's behalf or under the party's control. For purposes of the duty to supplement, the term also includes entities, which become parties subsequent to the date this request for documents is served.

6.     "RELATING TO" and or "RELATES TO" means in whole or in part constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, or dealing with, or in any way pertaining to.

7.     "CONCERNING" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, and constituting.

8.     "COMMUNICATION" means the transmission, sending and/or receipt of information of any kind by or through any means, including but not limited to speech, writings, language machine (foreign or otherwise), computer electronics of any kind (e.g., email), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, "floppy disks", CD-ROM disks, sound, radio or video signals, telecommunication, telephone, teletype, facsimile, telegraph, microfilm, microfiche, photographic film of any type, and

other media of any kind. The term "communication" also includes, without limitations all "records" (as hereafter defined) and all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, and press, publicity or trade releases.

9. "RECORD(S)" means all documents and writings of any kind, and all communications (as defined above) which are stored or retrievable or recorded in any manner, including originals and all non-identical copies whether different from the originals by notation made on such copies or otherwise, all drafts, alterations, modifications, changes and amendments, graphic or any electronic or mechanical records or representation of any kind, created during the period 2000 to present. Any electronic records or computer data which may exist shall be produced in its native file format. Native file format is a file saved in the format as designated by the original application used to create it. Such electronic data should be provided on one of the following media: USB flash drive, CD-ROM or DVD-ROM.

10. "Electronic or magnetic data" means electronic information that is stored in a medium from which it can be retrieved and examined. The term refers to the original (or identical duplicate when the original is not available) and any other copies of the data that may have attached comments, notes, marks, or highlighting of any kind. Electronic or magnetic data includes, but is not limited to, the following: computer programs; operating systems; computer activity logs; programming notes or instructions; e-mail receipts, messages, or transmissions; output resulting from the use of any software program, including word-processing documents, spreadsheets, database files, charts, graphs, and outlines; metadata; TIFF and PDF files; batch files; deleted files; temporary files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; adjuster log(s), ; and any miscellaneous files or file fragments. Electronic or magnetic data includes any items stored on magnetic, optical, digital, or other electronic-storage media, such as hard drives, floppy disks, CD-ROMs, DVDs, tapes, smart cards, integrated-circuit cards (e.g., SIM cards), removable media (e.g., Zip drives, Jaz cartridges, flash drives, removable/portable hard drives and backup drives), microfiche, punched cards. Electronic or magnetic data also includes the file, folder, tabs, containers, and labels attached to or associated with any physical storage device with each original or copy.

11. "DATE" means the exact date, month, and year, if ascertainable, or, if not, the best available approximation.

12. "DESCRIBE" and "IDENTIFY", when referring to a person, require statements of the following:

    a.    The full name.
    b.    The present or last known residential address.
    c.    The present or last known residential and office telephone numbers.
    d.    The present occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular request.

e.  In the case of any person other than an individual, identify the officer, employee, or agent most closely connected with the subject matter of the request and identify the officer who is responsible for supervising that officer or employee.

13. "DESCRIBE" and "IDENTIFY", when referring to a document, are defined to require that you state the following:

a.  The nature (e.g., letter, handwritten note) of the document

b.  The title or heading that appears on the document

c.  The date of the document and the date of each addendum supplement, or other addition or change.

d.  The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

e.  The present location of the document, and the name, address, position, or title, and telephone number of the person or person having custody of the document.

14. The words "AND" and "OR" should be construed either conjunctively or disjunctively as required by the context to bring within the scope of these discovery requests any answer, response or document that might be deemed outside its scope by another construction.

15. "PERTAINS TO" or "PERTAINING TO" means relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, reflects, refutes, disputes, rebuts, controverts or contradicts.

16. The term "LAWSUIT" means Cause No. _____, *CARLOS DURHAM AND DEBORAH DURHAM VS. ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY, CHRISTOPHER JANOPOLIS, JOHN BUCKWALTER AND JOSEPH GRIFFITH,* In the District Court of Harris County, Texas, ___th Judicial District

17. "RESIDENCE" and/or "PROPERTY" refers to the property located at 24703 Kennington Way, Spring, TX 77389.

## PLAINTIFFS' REQUESTS FOR PRODUCTION TO DEFENDANT
## JOSEPH GRIFFITH

1.     The insurance policy in effect on the date of Plaintiffs' claim(s) made the basis of this lawsuit.

       RESPONSE:

2.     The entire claims investigation files generated and/or maintained by Defendant in the ordinary course of business pertaining to Plaintiffs' claim(s) making the basis of this lawsuit.

       RESPONSE:

3.     All training and educational materials which instruct claim adjusters, claim handlers, claim representatives and independent adjusters, including Defendant in handling claims for property damage under residential and/or homeowners insurance policies in Texas. This request is limited to the last five (5) years.

       RESPONSE:

4.     All training and educational materials which instruct claim adjusters, claim handlers, claim representatives and independent adjusters, including Defendant in handling claims for hail damage, water damage, roof damage and/or wind damage under residential and/or homeowners insurance policies in Texas.  This request is limited to the last five (5) years.

       RESPONSE:

5.     All procedure or policy manuals or guides meant to guide and assist claim adjusters, claim handlers, claim representatives and independent adjusters, including Defendant in handling claims for property damage, including the criteria for and the process for evaluating whether coverage exists under residential and/or homeowners insurance policies in Texas. This request is limited to the last five (5) years.

       RESPONSE:

6.    All procedure or policy manuals or guides meant to guide and assist claim adjusters, claim handlers, claim representatives and independent adjusters, including Defendant in handling claims for hail damage, water damage, roof damage and/or wind damage, including the criteria for and the process for evaluating whether coverage exists under residential and/or homeowners insurance policies in Texas.  This request is limited to the last five (5) years.

RESPONSE:


7.    All communications and documents, including electronic (emails, text messages, instant messages, etc.), between Defendant and Plaintiffs regarding Plaintiffs' claim(s).

RESPONSE:


8.    All communications and documents, including electronic (emails, text messages, instant messages, etc.), between Defendant and any third party regarding Plaintiffs' claim(s).

RESPONSE:


9.    All communications and documents, including electronic (emails, text messages, instant messages, etc.), between Defendant and any other defendant(s) regarding Plaintiffs' claim(s).

RESPONSE:


10.   All communications and documents, including electronic (emails, text messages, instant messages, etc.), Defendant sent to any other defendant(s) in this cause of action regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit, after Plaintiffs made their claim(s) for coverage.

RESPONSE:


11.   All photographs, diagrams, drawings, videos or other graphic depictions of Plaintiffs or Plaintiffs' Property.

RESPONSE:


12.   Any and all documents, including but not limited to emails, text messages, instant messages, reports, data, notes and summaries regarding Plaintiffs' claim(s) made the basis of this lawsuit.

RESPONSE:

13.     All reports and other documents from governmental agencies or offices regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit or containing officially kept information regarding Plaintiffs, Plaintiffs' property or Plaintiffs' claim made the basis of this lawsuit.

RESPONSE:

14.     Any and all claim files and claim reports, including but not limited to notes, log notes, activity logs, daily logs, field notes, estimates, emails, text messages, instant messages, payment documents, photos, videos, summaries, and any other claim data or documents regarding all residential and/or homeowners insurance claims made by Plaintiffs under their residential and/or homeowners insurance policies.

RESPONSE:

15.     All documents regarding testing or sampling on or at Plaintiffs' Property made the basis of this Lawsuit.

RESPONSE:

16.     All photographs and videos regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this Lawsuit.

RESPONSE:

17.     All documents, videos, photos, drawings or other graphical depictions of any inspection of Plaintiffs' property or relating to any inspection of Plaintiffs' Property.

RESPONSE:

18.     Any and all records Defendant received, including those obtained by way of deposition upon written questions, regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit.

RESPONSE:

19.     Any and all non-privileged records or documents Defendant has reviewed and/or obtained regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit.

        RESPONSE:

20.     Any and all claims files Defendant has reviewed and/or obtained regarding Plaintiffs' Property made the basis of this lawsuit.

        RESPONSE:

21.     Any and all records or documents Defendant has reviewed and/or obtained from third parties (excluding testifying experts) regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit.

        RESPONSE:

22.     All bulletins or other communications received from the Texas Department of Insurance, the Texas Insurance Commissioner and/or their employees, agents or representatives or from ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY and/or any of its employees, agents or representatives regarding practices in the handling of claims for property damage, hail damage, water damage, roof damage and wind damage under residential and/or homeowners insurance policies in Texas. This request is limited to the last five (5) years.

        RESPONSE:

23.     All materials meant to instruct and guide adjusters, including Defendant under Texas law and/or under ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY's company policy with regard to unfair claims settlement practices, unfair claims handling practices, standards to be met in adjusting or handling first party insurance claims, or avoiding charges of bad faith in Texas. This request is limited to the last five (5) years.

        RESPONSE:

24.     All materials meant to instruct and guide Defendant, including Defendant under Texas law and/or under ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY's company policy with regard to understanding and complying with the Texas Insurance Code §541.060 and/or Article 21.21. This request is specifically limited to the last five (5) years.

RESPONSE:

25.     Any and all materials, documents, statements and/or files that demonstrate Defendant's income from adjusting residential or commercial property claims. This request is limited to the last five (5) years.

RESPONSE:

26.     Any and all materials, documents, statements and/or files that demonstrate Defendant's net income from ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY. This request is limited to the last five (5) years.

RESPONSE:

27.     Any and all materials, documents, statements and/or files that reflect complaints and/or lawsuits filed by insureds against Defendant regarding the handling, review and/or adjusting of residential and/or homeowners insurance claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

28.     Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents, if any, used or relied upon by Defendant to conduct any training, seminars and/or classes regarding the adjusting and/or handling of residential insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

29.     Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents used or relied upon by Defendant in the adjusting and/or handling of residential and/or homeowners insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

30. Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents issued by Defendant ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY and received and/or relied upon by Defendant pertaining to the adjusting and/or handling of residential insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims, and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

31. Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents issued by any third party to Defendant or received by Defendant pertaining to the adjusting and/or handling of residential insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

32. Any and all materials, handouts, manuals, outlines, articles, and/or documents distributed and/or disbursed to Defendant in connection with attendance at seminars and/or continuing education classes regarding the adjusting and/or handling of residential insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims, and/or wind damage claims in Texas, within the last five (5) years.

RESPONSE:

33. Any and all materials reflecting Defendant's attendance at seminars and/or continuing education classes regarding the adjusting and/or handling of residential and/or homeowners insurance claims, commercial insurance claims, property damage claims, hail damage claims, water damage claims, roof damage claims, and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

34. Any and all materials, documents, files, and/or reports sent to Defendant by ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY regarding Plaintiffs' claim(s).

RESPONSE:

35.   Any and all materials, documents, files, and/or reports sent from Defendant to ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY regarding Plaintiffs' claim(s).

RESPONSE:

36.   Any and all documents and materials, including instructional, "how to" or teaching manuals pertaining to any computer program Defendant used or relied upon to perform property damage estimates on residential and/or homeowners insurance claims in Texas, including any materials relating to the computer program used to adjust Plaintiffs' claim(s). This request is limited to the last five (5) years.

RESPONSE:

37.   Any and all documents, including training, educational and instructional materials, "how to" manuals or teaching manuals provided to or received by Defendant from any source in the use of computer programs to perform property damage estimates on residential and/or homeowners insurance claims in Texas, including the computer program used to adjust Plaintiffs' claim(s). This request is limited to the last five (5) years.

RESPONSE:

38.   Any and all pricing studies and/or pricing guides and supporting documents pertaining to the prices of materials and/or labor to repair property damage within Texas, including the Houston, Texas Gulf Coast and Harris County areas from January 1, 2015 to present.

RESPONSE:

39.   Any and all materials, handouts, manuals, outlines, articles, presentations, PowerPoint slides and/or other documents that have been distributed by and/or disbursed to Defendant regarding the price estimates of contractors and changes of those estimates within different geographical areas of the State of Texas. This request is limited to the last five (5) years.

RESPONSE:

40.   Any and all activity logs or daily logs relating to Plaintiffs' claim made the basis of this lawsuit.

RESPONSE:

41. Any and all documents reflecting guidelines, procedures, or policies that serve as criteria for evaluating whether claims are covered or excluded by any policy provisions Defendant contends apply to Plaintiffs' claim(s).

    RESPONSE:

42. Any and all records reflecting payment to Plaintiffs concerning Plaintiffs' claim(s) made the basis of this lawsuit.

    RESPONSE:

43. Any and all documents, including employment agreements or contracts, relating to or reflecting Defendant's association or relationship with any adjusting company.

    RESPONSE:

44. Any and all documents, including employment agreements or contracts, relating to or reflecting Defendant's association or relationship with Defendant ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY.

    RESPONSE:

45. Any and all documents, including but not limited to contracts, fee schedules, rules, policies, procedures, guidelines and/or instructions exchanged between Defendant and Defendant ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY.

    RESPONSE:

46. Any and all certifications and licenses held by Defendant, including those pertaining to adjusting property claims.

    RESPONSE:

47. Any and all documents relating to the assignment of Plaintiffs' claim(s) to Defendant.

    RESPONSE:

48.     Any and all documents, photographs or other materials exchanged between Defendant and Plaintiffs.

        RESPONSE:

49.     Any and all documents exchanged between Defendant, Plaintiffs and any other defendant and/or any other entities with whom Defendant worked or communicated regarding Plaintiffs, Plaintiffs' Property or Plaintiffs' claim made the basis of this lawsuit.

        RESPONSE:

50.     All physical or tangible items and/or evidence obtained by or on behalf of Defendant from Plaintiffs' Property made the basis of this lawsuit.

        RESPONSE:

51.     Any and all indemnity agreements between Defendant and any other person, firm, corporation or entity against which a claim of indemnification might be brought because of this lawsuit or the facts in this lawsuit.

        RESPONSE:

52.     All e-mails, text messages and instant messages regarding the investigation, adjusting and/or handling of Plaintiffs' claim(s) made the basis of this lawsuit.

        RESPONSE:

53.     All e-mails, text messages and instant messages between Defendant and other adjusters, supervisors, officers, and/or executives regarding educational programs or changes in the educational programs relating to the handling of property damage claims, hail damage claims, water damage claims, roof damage claims, and/or wind damage claims.  This is limited to the past five (5) years.

        RESPONSE:

54.     True and complete copies of all billing records, time sheets and/or documents used to justify Defendant's billing regarding Plaintiffs' claim(s) made the basis of this lawsuit.

        RESPONSE:

55.  A list of all claims adjusted by you for Defendant ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY from January 1, 2015 to present.

RESPONSE:

56.  Copies of the front and back of each negotiated check made payable solely or co-payable to Plaintiffs regarding the insurance claim made the basis of this lawsuit.

RESPONSE:

57.  Affidavits or depositions given by you in other cases involving the same or similar allegations as in this case. This is limited to the past five (5) years.

RESPONSE:

58.  Any and all reports, documents or correspondence containing lists of lawsuits filed against Defendant pertaining to property damage, hail damage, water damage, roof damage and/or wind damage and/or handling of same from 2008 through the present.

RESPONSE:

59.  Any and all materials, documents, files, invoices, and/or reports received from any and all contractors, roofing companies and/or roofing manufacturers (excluding testifying experts) retained to investigate, inspect, and/or evaluate Plaintiffs' claim(s) made the basis of this lawsuit.

RESPONSE:

60.  If you are withholding documents based upon the assertion of a privilege, please produce a privilege log, detailing with reasonable particularity a description of the documents withheld, the number of documents, and the privilege which Defendant claims properly precludes the information from discovery.

RESPONSE:

**"EXHIBIT C"**

**CAUSE NO. _____**

| | | |
|---|---|---|
| **CARLOS DURHAM AND DEBORAH** | § | **IN THE DISTRICT COURT OF** |
| **DURHAM,** | § | |
|     *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ALLSTATE VEHICLE & PROPERTY** | § | |
| **INSURANCE COMPANY,** | § | |
| **CHRISTOPHER JANOPOLIS, JOHN** | § | |
| **BUCKWALTER AND JOSEPH** | § | |
| **GRIFFITH,** | § | |
|     *Defendants.* | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFF CARLOS DURHAM'S FIRST SET OF INTERROGATORIES TO DEFENDANT ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY

TO:    DEFENDANT ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY, by and through its Attorney for Service: CT Corporation, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

        Pursuant to Rule 197 of the Texas Rules of Civil Procedure, Plaintiffs request that the above-named Defendant, ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in the following set of interrogatories.

Respectfully submitted,

**LAW OFFICE OF MYNOR E. RODRIGUEZ, P.C.**

*/s/ Mynor "Eddie" Rodriguez*
Mynor "Eddie" Rodriguez
State Bar No. 24037381
1300 McGowen, Suite 280
Houston, TX 77004
(832) 779-1081 (Office)
(832) 553-7420 (Facsimile)
mrodriguez@rodrigueztrialfirm.com

**ATTORNEYS FOR PLAINTIFFS**

Page 1 of 13

## INSTRUCTIONS

1.  For any requested information about a document that no longer exists or cannot be located, identify the document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence or when it could no longer be located, and give the reasons for the disappearance. Also, identify each person having knowledge about the disposition or loss, and identify each document evidencing the existence or nonexistence of each document that cannot be located.

## DEFINITIONS

The following definitions shall have the following meanings, unless the context of the requests for documents require otherwise:

1. "PLAINTIFFS," means Carlos Durham and Deborah Durham, along with their family members, agents, representatives, and all other persons acting in concert with them, or under their control, whether directly or indirectly, including any attorney.

2. "DEFENDANT," means ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY, along with its agents, representatives, and all other persons acting in concert with it, or under its control, whether directly or indirectly, including any attorney.

3. "DOCUMENT," "DOCUMENTS" and "DOCUMENTATION" are used in their broadest sense and mean all written, printed, typed, recorded, or graphic matter of every kind and description, source and authorship, both originals and all nonidentical copies thereof, and all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative or private entity or person. Without limiting the foregoing, the terms "document" and "documents" include handwritten, typewritten, printed, photocopied, photographic or recorded, stenographic, computer-generated, computer-installed or electronically stored matters, however and by whomever produced, prepared, reproduced, disseminated or made, and includes communications in words, symbols, pictures, sound recordings, films, tapes and information stored in, or accessible through, computer of other information storage or retrieval systems, together with the codes and/or programming instruction and other materials necessary to understand and use such systems. For purposes of illustration and no limitation, "documents" includes: accounts; advertising; affidavits; agendas; agreements; analyses; analytical records; announcements; appointment books; appraisals; articles; bills; statements and other records of obligations and expenditures; books; brochures; bulletins; calendars; checks; cancelled checks, vouchers, receipts and other records of payments; charts, drawings; check registers; checkbooks; circulars; collateral files and contents; communications; compilations; confirmations; consultant's reports; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; data compilations from which information can be obtained (including matter used in data processing); deeds of trust; deposit slips, diaries, diary entries; drafts; envelopes; folders or similar containers; expense reports; facsimile transmissions; files; film tape; financial statements; forecasts; graphs; guaranty agreements; instructions, invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; letters of credit; lists; log books; logs, notes or memoranda of telephonic or face-to-face conversations; manuals; maps, marginal notations; memoranda of all kinds to and from any persons, agencies or entities; messages; microfilm; microfiche; minutes; minute books; notes; notebooks; notices; pamphlets; parts lists; papers; photographs, press releases; printed

matter (including published books, articles, speeches and newspaper clippings); printouts; programs; punch cards; purchase orders; receipts; recommendations; records; records of administrative, technical and financial actions taken or recommenced; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; sell orders; sound recordings; specifications; speeches; statement of bank accounts; statements, interviews; statistical data; statistical statements, stock transfer ledger; studies; surveys; tables; tabulations; tape or disk recordings; tape programs; technical and engineering reports, evaluations; advice; recommendations; commentaries; conclusions; studies; test plans; manuals; procedures; data; reports; results and conclusions; summaries, minutes, notes and other records and recording of any conference, meetings, visits, negotiations, statement, interviews or telephone conversations; other summaries; telegrams; teletypes, telexes and other communications sent or received; time records; telephone bills or records; trade letters; transcripts of hearings; transcripts of testimony; UCC instruments; video recordings; visitor records; vouchers; work assignments; work sheets; work papers; and all other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored or electronically stored matter, however or by whomever produced, prepared, reproduced, disseminated or made, the contents of which relate to, discuss, consider or otherwise refer to the subject matter of the particular discovery requested.

4. "PERSON" includes individuals, associates of individuals, partnerships, joint-stock companies, corporations, or trustee or receiver of an individual, association of individuals, joint-stock company or corporation, and any other type of entity or institution, whether formed for business or any other purposes.

5. "PARTY" shall mean any party whomsoever to the dispute, and includes each party's agents, employees, attorneys, representatives, predecessors, successors, affiliates, partners, officers, directors, principals and any and all other persons acting or purporting to act on the party's behalf or under the party's control. For purposes of the duty to supplement, the term also includes entities, which become parties subsequent to the date this request for documents is served.

6. "RELATING TO" and or "RELATES TO" means in whole or in part constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, or dealing with, or in any way pertaining to.

7. "CONCERNING" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, and constituting.

8. "COMMUNICATION" means the transmission, sending and/or receipt of information of any kind by or through any means, including but not limited to speech, writings, language (machine, foreign or otherwise), computer electronics of any kind (e.g., email), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, "floppy disks", CD-ROM disks, sound, radio or video signals, telecommunication, telephone teletype, facsimile, telegraph, microfilm, microfiche, photographic film of any type and

other media of any kind. The term "communication" also includes, without limitations all "records" (as hereafter defined) and all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, and press, publicity or trade releases.

9.   "RECORD(S)" means all documents and writings of any kind, and all communications (as defined above) which are stored or retrievable or recorded in any manner, including originals and all non-identical copies whether different from the originals by notation made on such copies or otherwise, all drafts, alterations, modifications, changes and amendments, graphic or any electronic or mechanical records or representation of any kind, created during the period 2000 to present. Any electronic records or computer data which may exist shall be produced in its native file format. Native file format is a file saved in the format as designated by the original application used to create it. Such electronic data should be provided on one of the following media: USB flash drive, CD-ROM or DVD-ROM.

10.   "Electronic or magnetic data" means electronic information that is stored in a medium from which it can be retrieved and examined. The term refers to the original (or identical duplicate when the original is not available) and any other copies of the data that may have attached comments, notes, marks, or highlighting of any kind. Electronic or magnetic data includes, but is not limited to, the following: computer programs; operating systems; computer activity logs; programming notes or instructions; e-mail receipts, messages, or transmissions; output resulting from the use of any software program, including word-processing documents, spreadsheets, database files, charts, graphs, and outlines; metadata; TIFF and PDF files; batch files; deleted files; temporary files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; adjuster log(s), ; and any miscellaneous files or file fragments. Electronic or magnetic data includes any items stored on magnetic, optical, digital, or other electronic-storage media, such as hard drives, floppy disks, CD-ROMs, DVDs, tapes, smart cards, integrated-circuit cards (e.g., SIM cards), removable media (e.g., Zip drives, Jaz cartridges, flash drives, removable/portable hard drives and backup drives), microfiche, punched cards. Electronic or magnetic data also includes the file, folder, tabs, containers, and labels attached to or associated with any physical storage device with each original or copy.

11.   "DATE" means the exact date, month, and year, if ascertainable, or, if not, the best available approximation.

12.   "DESCRIBE" and "IDENTIFY", when referring to a person, require statements of the following:

a.   The full name.
b.   The present or last known residential address.
c.   The present or last known residential and office telephone numbers.
d.   The present occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular request.

e.   In the case of any person other than an individual, identify the officer, employee, or agent most closely connected with the subject matter of the request and identify the officer who is responsible for supervising that officer or employee.

13. "DESCRIBE" and "IDENTIFY", when referring to a document, are defined to require that you state the following:

a.   The nature (e.g., letter, handwritten note) of the document
b.   The title or heading that appears on the document
c.   The date of the document and the date of each addendum supplement, or other addition or change.
d.   The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.
e.   The present location of the document, and the name, address, position, or title, and telephone number of the person or person having custody of the document.

14. The words "AND" and "OR" should be construed either conjunctively or disjunctively as required by the context to bring within the scope of these discovery requests any answer, response or document that might be deemed outside its scope by another construction.

15. "PERTAINS TO" or "PERTAINING TO" means relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, reflects, refutes, disputes, rebuts, controverts or contradicts.

16. The term "LAWSUIT" means Cause No. _____, *CARLOS DURHAM AND DEBORAH DURHAM VS. ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY, CHRISTOPHER JANOPOLIS, JOHN BUCKWALTER AND JOSEPH GRIFFITH,* In the District Court of Harris County, Texas, ___th Judicial District

17. "RESIDENCE" and/or "PROPERTY" refers to the property located at 24703 Kennington Way, Spring, TX 77389.

## PLAINTIFF CARLOS DURHAM'S FIRST SET OF INTERROGATORIES TO DEFENDANT ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY

1.  Please state the name, address (residence and work), telephone number, employer and position or job title of all persons answering these Interrogatories.

    ANSWER:

2.  Please state whether Defendant has been sued under its correct name and in its capacity. If Defendant has not been sued under its correct name and/or in its correct capacity, please state Defendant's correct name and/or capacity so that proper service may be obtained.

    ANSWER:

3.  Please state whether Defendant contends that any conditions precedent to Plaintiffs' recovery have not been met, whether said conditions be stated in the insurance policy or required by law. If so, state what conditions have not been met.

    ANSWER:

4.  Please provide the following dates of communication between Defendant or anyone acting on Defendant's behalf and Plaintiffs regarding Plaintiffs' claim made the basis of this lawsuit. If the described communication did not occur, please so state in the answer. Also, identify and/or describe the form of each communication (i.e., written, verbal, electronic, etc.), the name and job title or position of the person making and/or receiving the communication and identify any documents or tangible items exchanged on the dates listed and the location of any such documents:

    a) date Defendant received Plaintiffs' notice of claim for property damage;
    b) date Defendant first acknowledged Plaintiffs' notice of claim;
    c) date Defendant first commenced investigation of Plaintiffs' claim;
    d) date(s) Defendant requested all items, statements and forms that Defendant reasonably believed would be required from Plaintiffs to investigate the claim;
    e) date(s) Defendant made any additional requests for items, statements and forms that Defendant reasonably believed would be required from Plaintiffs to investigate the claim;
    f) date(s) Defendant mailed or hand delivered any estimate(s) to Plaintiffs on their claim;
    g) date Defendant notified Plaintiffs in writing of the acceptance or rejection of their claim;

h) date Defendant notified Plaintiffs that Defendant would pay any part of Plaintiffs' claim; and

i) date Defendant mailed or hand delivered any payments to Plaintiffs on their claim.

ANSWER:

5. If Defendant contends that Plaintiffs did not provide Defendant with requested items, statements or forms that were required in order to properly evaluate Plaintiffs' claim(s), please state what items, statements or forms were requested, the form of each such request (i.e., written, verbal, electronic, etc.), the dates of each request, and what items, statements or forms were received.

ANSWER:

6. State the name, address, telephone number, and job title or position of all persons who issued, adjusted, investigated, reviewed, handled, made entries, made decisions, or exchanged any documents or communications, including electronic, regarding Plaintiffs' insurance policy or Plaintiffs' claim(s) made the basis of this lawsuit, including the name, address, and telephone number of the supervisor(s) and/or manager(s) of the person. For any such person who is no longer an employee, agent, or representative of Defendant, please so indicate and provide the person's last known address and telephone number.

ANSWER:

7. Identify every communication, whether verbal, written or electronic (including emails, instant messages or text messages) exchanged between Defendant or Defendant's employees, representatives, managers, claim adjusters, claim handlers, claim representatives, independent adjusters, agents and/or Lee Wesley Mitchell and/or Plaintiffs relating to coverage under the Policy and/or Plaintiffs' claim made the basis of this lawsuit. Also, state the current location of any such written or electronic communications.

ANSWER:

8. Identify and describe each on-site inspection of Plaintiffs' Property, including the date of each inspection; the identity of each person(s) present at each inspection; and the identity and employer of the person(s) who performed any part of each inspection.

ANSWER:

9.    Identify each computer program used by Defendant to handle, track, investigate, and/or adjust residential or homeowners insurance claims in Texas from January 1, 2015 to present. For each of the programs named, please provide and identify:

    a) the name of the contact or liaison person for Defendant at the company that administers, created and/or maintains the program or if the program is a proprietary Allstate Vehicle & Property Insurance program or is used only by Allstate Vehicle & Property Insurance, the name of the department(s) that administers, created and/or maintains the program;

    b) the form program updates and/or revisions are received by Defendant and by Defendant's employees, representatives, and/or any of its claim adjusters, claim handlers, claim representatives or independent adjusters;

    c) the date(s) of program updates and/or revisions from January 1, 2015 to present;

    d) the information or materials provided to Defendant from the company that administers, created and/or maintains the program on how to use the program;

    e) the information or materials provided to Defendant from the company that administers, created and/or maintains the program about any problems or issues with the program from January 1, 2015 to present;

    f) the information or materials provided by Allstate Vehicle & Property Insurance or made available to Defendant's, employees, representatives, and/or any of its claim adjusters, claim handlers, claim representatives or independent adjusters regarding how to use the program from January 1, 2015 to present;

    g) the information or materials provided by Allstate Vehicle & Property Insurance or made available to Defendant's, employees, representatives, and/or any of its claim adjusters, claim handlers, claim representatives or independent adjusters about any problems or issues with the program from January 1, 2015 to present; and

    h) the training Defendant's employees, representatives and/or any of its claim adjusters, claim handlers, claim representatives or independent adjusters received on the program from January 1, 2015 to present and the dates and locations of any such training.

ANSWER:

10.    Explain all efforts by Defendant, anyone acting on its behalf, or by any other person or entity relied on by Defendant in the adjusting and estimating of residential or homeowners property claims, to investigate, collect, research, compile and/or confirm data regarding the prices of materials and/or labor to repair property damage within Texas, including the Houston, Texas Gulf Coast and Harris County areas, from January 1, 2015 to present.

ANSWER:

11.  State every basis, in fact and in the terms of Plaintiffs' policy, for Defendant's failure to pay for Plaintiffs' full claim(s).

     ANSWER:

12.  State the legal theories and describe the factual bases, for your contention that Defendant fully complied with each of the claims handling requirements codified in Tex. Ins. Code §541.060.

     ANSWER:

13.  State the legal theories and describe the factual bases for your contention that Defendant fully complied with each of the claims handling requirements codified in Tex. Ins. Code §542.055.

     ANSWER:

14.  State the legal theories and describe the factual bases for your contention that Defendant fully complied with each of the claims handling requirements codified in Tex. Ins. Code §542.056.

     ANSWER:

15.  State the legal theories and describe the factual bases for your contention that Defendant fully complied with each of the claims handling requirements codified in Tex. Ins. Code §542.058.

     ANSWER:

16.  List and identify any training seminars, courses, classes or meetings (including any provided online) put on by Defendant or on Defendant's behalf to educate claim adjusters, claim handlers, claim representatives, independent adjusters or any other person used by Defendant to investigate, adjust, inspect, review or handle residential or homeowners insurance claims for property damage in Texas for the last five (5) years. Please provide the name, address and telephone number of the entity or individual that sponsored and/or provided the course, seminar, education, training or other experience.

     ANSWER:

17.     List and identify any and all courses, seminars, education, training, classes or meetings (including any provided online) put on by Defendant or on Defendant's behalf to educate claim adjusters, claim handlers, claim representatives, independent adjusters or any other person used by Defendant to investigate, adjust, inspect, review or handle residential or homeowners insurance claims for property damage, concerning knowledge of Texas Insurance Code Chapter 541, formerly Art. 21.21, *et.seq.* and Texas Insurance Code Chapter 542, formerly Art. 21.55, *et.seq.* Please provide the name, address and telephone number of the entity or individual that sponsored and/or provided the course, seminar, education, training or other experience. This request is limited to the last five (5) years.

        ANSWER:

18.     List and identify any and all courses, seminars, education, training, classes or meetings (including any provided online) put on by Defendant or on Defendant's behalf to educate claim adjusters, claim handlers, claim representatives, independent adjusters or any other person used by Defendant to investigate, adjust, inspect, review or handle residential or homeowners insurance claims for property damage, concerning residential or commercial construction, including but not limited to roofing, framing, foundation, drywall and/or any other component of construction and/or property repair. Please provide the name, address and telephone number of the entity or individual that sponsored and/or provided the course, seminar, education, training or other experience.  This request is limited to the last five (5) years.

        ANSWER:

19.     Identify all person(s) within Defendant's organization responsible for reviewing, responding to and/or handling complaints filed by policyholders about Defendant's handling of first party claims for property damage under residential or homeowners policies in Texas from January 1, 2015 to present. Include each person's name, address, telephone number and job position or title. If the person is no longer employed with Defendant, please give the last known address, telephone number and job position held within Defendant's organization.

        ANSWER:

20.     For each investigation by a Texas governmental agency into Defendant's practices when handling first party claims for property damage coverage under residential and/or homeowner and/or commercial policies, state the name of the agency, the names of all investigators, and the names of all government representatives with whom Defendant communicated for purposes of the investigation. This is limited to the last three (3) years.

        ANSWER:

21.   State every basis, in fact and in the terms of Plaintiffs' policy, for Defendant's denial and/or recommendation of denial of Plaintiffs' claim(s).

      ANSWER:

22.   Identify all person(s) within Defendant's organization with knowledge of, who participated in and/or were responsible for searching for, compiling, data-mining, reviewing and/or producing the documents requested in Plaintiffs' Requests for Production.

      ANSWER:

23.   Identify by name, address, and telephone number all persons and or entities, agency or agents and brokers that issued Plaintiffs' policy for the Property.

      ANSWER:

24.   Identify by name, address, and telephone number all persons and/or entities, agency or agents, and brokers that participated in any way in the underwriting of Plaintiffs' policy for the Property.

      ANSWER:

25.   Please state whether Defendant took, or is aware of the taking of, a recorded statement and/or examination under oath of any Plaintiffs or of any representative of, agent, or person employed by Plaintiffs regarding the claim made the basis of this lawsuit. If a recorded statement and/or examination under oath was taken, please state the date it was taken and the name of the person taking the statement or examination. Please also state whether the statement or examination was transcribed, where the statement or examination is currently located, and/or the last place Defendant saw a transcript of same.

      ANSWER:

**"EXHIBIT C-1"**

**CAUSE NO. _____**

| | | |
|---|---|---|
| **CARLOS DURHAM AND DEBORAH** | § | **IN THE DISTRICT COURT OF** |
| **DURHAM,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ALLSTATE VEHICLE & PROPERTY** | § | |
| **INSURANCE COMPANY,** | § | |
| **CHRISTOPHER JANOPOLIS, JOHN** | § | |
| **BUCKWALTER AND JOSEPH** | § | |
| **GRIFFITH,** | § | |
| *Defendants.* | § | **\_\_\_\_ JUDICIAL DISTRICT** |

## PLAINTIFF CARLOS DURHAM' FIRST SET OF INTERROGATORIES TO DEFENDANT CHRISTOPHER JANOPOLIS

TO:   DEFENDANT CHRISTOPHER JANOPOLIS, by personal service at his place of residence at 5319 LAKE WILSON RD, ELM CITY, NC 27822-8358.

Pursuant to Rule 197 of the Texas Rules of Civil Procedure, Plaintiffs request that the above-named Defendant, Christopher Janopolis (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in the following set of interrogatories.

Respectfully submitted,

**LAW OFFICE OF MYNOR E. RODRIGUEZ, P.C.**

*/s/ Mynor "Eddie" Rodriguez*
Mynor "Eddie" Rodriguez
State Bar No. 24037381
1300 McGowen, Suite 280
Houston, TX 77004
(832) 779-1081 (Office)
(832) 553-7420 (Facsimile)
mrodriguez@rodrigueztrialfirm.com

**ATTORNEYS FOR PLAINTIFFS**

## INSTRUCTIONS

1.    For any requested information about a document that no longer exists or cannot be located, identify the document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence or when it could no longer be located, and give the reasons for the disappearance.  Also, identify each person having knowledge about the disposition or loss, and identify each document evidencing the existence or nonexistence of each document that cannot be located.

## DEFINITIONS

The following definitions shall have the following meanings, unless the context of the requests for documents require otherwise:

1.  "PLAINTIFFS," means Carlos Durham and Deborah Durham, along with their family members, agents, representatives, and all other persons acting in concert with them, or under their control, whether directly or indirectly, including any attorney.

2.  "DEFENDANT," means Christopher Janopolis, along with his agents, representatives, and all other persons acting in concert with him, or under his control, whether directly or indirectly, including any attorney.

3.  "DOCUMENT," "DOCUMENTS" and "DOCUMENTATION" are used in their broadest sense and mean all written, printed, typed, recorded, or graphic matter of every kind and description, source and authorship, both originals and all nonidentical copies thereof, and all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative or private entity or person. Without limiting the foregoing, the terms "document" and "documents" include handwritten, typewritten, printed, photocopied, photographic or recorded, stenographic, computer-generated, computer-installed, or electronically stored matters, however and by whomever produced, prepared, reproduced, disseminated or made, and includes communications in words, symbols, pictures, sound recordings, films, tapes and information stored in, or accessible through, computer of other information storage or retrieval systems, together with the codes and/or programming instruction and other materials necessary to understand and use such systems. For purposes of illustration and no limitation, "documents" includes: accounts; advertising; affidavits; agendas; agreements; analyses; analytical records; announcements; appointment books; appraisals; articles; bills; statements and other records of obligations and expenditures; books; brochures; bulletins; calendars; checks; cancelled checks, vouchers, receipts and other records of payments; charts, drawings; check registers; checkbooks; circulars; collateral files and contents; communications; compilations; confirmations; consultant's reports; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; data compilations from which information can be obtained (including matter used in data processing); deeds of trust; deposit slips, diaries, diary entries; drafts; envelopes; folders or similar containers; expense reports; facsimile transmissions; files; film tape; financial statements; forecasts; graphs; guaranty agreements; instructions, invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; letters of credit; lists; log books; logs, notes or memoranda of telephonic or face-to-face conversations; manuals; maps, marginal notations; memoranda of all kinds to and from any persons, agencies or entities; messages; microfilm; microfiche; minutes; minute books; notes; notebooks; notices; pamphlets; parts lists; papers; photographs, press releases; printed

matter (including published books, articles, speeches and newspaper clippings); printouts; programs; punch cards; purchase orders; receipts; recommendations; records; records of administrative, technical and financial actions taken or recommenced; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; sell orders; sound recordings; specifications; speeches; statement of bank accounts; statements, interviews; statistical data; statistical statements, stock transfer ledger; studies; surveys; tables; tabulations; tape or disk recordings; tape programs; technical and engineering reports, evaluations; advice; recommendations; commentaries; conclusions; studies; test plans; manuals; procedures; data; reports; results and conclusions; summaries, minutes, notes and other records and recording of any conference, meetings, visits, negotiations, statement, interviews or telephone conversations; other summaries; telegrams; teletypes; telexes and other communications sent or received; time records; telephone bills or records; trade letters; transcripts of hearings; transcripts of testimony; UCC instruments; video recordings; visitor records; vouchers; work assignments; work sheets; work papers; and all other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored or electronically stored matter, however or by whomever produced, prepared, reproduced, disseminated or made, the contents of which relate to, discuss, consider or otherwise refer to the subject matter of the particular discovery requested.

4.   "PERSON" includes individuals, associates of individuals, partnerships, joint-stock companies, corporations, or trustee or receiver of an individual, association of individuals, joint-stock company or corporation, and any other type of entity or institution, whether formed for business or any other purposes.

5.   "PARTY" shall mean any party whomsoever to the dispute, and includes each party's agents, employees, attorneys, representatives, predecessors, successors, affiliates, partners, officers, directors, principals and any and all other persons acting or purporting to act on the party's behalf or under the party's control.  For purposes of the duty to supplement, the term also includes entities, which become parties subsequent to the date this request for documents is served.

6.   "RELATING TO" and or "RELATES TO" means in whole or in part constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, or dealing with, or in any way pertaining to.

7.   "CONCERNING" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, and constituting.

8.   "COMMUNICATION" means the transmission, sending and/or receipt of information of any kind by or through any means, including but not limited to speech, writings, language machine (foreign or otherwise), computer electronics of any kind (e.g., email), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, "floppy disks", CD-ROM disks, sound, radio or video signals, telecommunication, telephone, teletype, facsimile, telegraph, microfilm, microfiche, photographic film of any type, and

other media of any kind.  The term "communication" also includes, without limitations all "records" (as hereafter defined) and all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, and press, publicity or trade releases.

9.    "RECORD(S)" means all documents and writings of any kind, and all communications (as defined above) which are stored or retrievable or recorded in any manner, including originals and all non-identical copies whether different from the originals by notation made on such copies or otherwise, all drafts, alterations, modifications, changes and amendments, graphic or any electronic or mechanical records or representation of any kind, created during the period 2000 to present.  Any electronic records or computer data which may exist shall be produced in its native file format.  Native file format is a file saved in the format as designated by the original application used to create it.  Such electronic data should be provided on one of the following media: USB flash drive, CD-ROM or DVD-ROM.

10.   "Electronic or magnetic data" means electronic information that is stored in a medium from which it can be retrieved and examined. The term refers to the original (or identical duplicate when the original is not available) and any other copies of the data that may have attached comments, notes, marks, or highlighting of any kind. Electronic or magnetic data includes, but is not limited to, the following: computer programs; operating systems; computer activity logs; programming notes or instructions; e-mail receipts, messages, or transmissions; output resulting from the use of any software program, including word-processing documents, spreadsheets, database files, charts, graphs, and outlines; metadata; TIFF and PDF files; batch files; deleted files; temporary files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; adjuster log(s), ; and any miscellaneous files or file fragments. Electronic or magnetic data includes any items stored on magnetic, optical, digital, or other electronic-storage media, such as hard drives, floppy disks, CD-ROMs, DVDs, tapes, smart cards, integrated-circuit cards (e.g., SIM cards), removable media (e.g., Zip drives, Jaz cartridges, flash drives, removable/portable hard drives and backup drives), microfiche, punched cards. Electronic or magnetic data also includes the file, folder, tabs, containers, and labels attached to or associated with any physical storage device with each original or copy.

11.   "DATE" means the exact date, month, and year, if ascertainable, or, if not, the best available approximation.

12.   "DESCRIBE" and "IDENTIFY", when referring to a person, require statements of the following:

a.    The full name.
b.    The present or last known residential address.
c.    The present or last known residential and office telephone numbers.
d.    The present occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular request.

    e.     In the case of any person other than an individual, identify the officer, employee, or agent most closely connected with the subject matter of the request and identify the officer who is responsible for supervising that officer or employee.

13.    "DESCRIBE" and "IDENTIFY", when referring to a document, are defined to require that you state the following:

    a.     The nature (e.g., letter, handwritten note) of the document

    b.     The title or heading that appears on the document

    c.     The date of the document and the date of each addendum supplement, or other addition or change.

    d.     The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

    e.     The present location of the document, and the name, address, position, or title, and telephone number of the person or person having custody of the document.

14.    The words "AND" and "OR" should be construed either conjunctively or disjunctively as required by the context to bring within the scope of these discovery requests any answer, response or document that might be deemed outside its scope by another construction.

15.    "PERTAINS TO" or "PERTAINING TO" means relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, reflects, refutes, disputes, rebuts, controverts or contradicts.

16.    The term "LAWSUIT" means Cause No. _____, *CARLOS DURHAM AND DEBORAH DURHAM VS. ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY, CHRISTOPHER JANOPOLIS, JOHN BUCKWALTER AND JOSEPH GRIFFITH*, In the District Court of Harris County, Texas, ___th Judicial District

17.    "RESIDENCE" and/or "PROPERTY" refers to the property located at 24703 Kennington Way, Spring, TX 77389.

## PLAINTIFF CARLOS DURHAM FIRST SET OF INTERROGATORIES TO DEFENDANT CHRISTOPHER JANOPOLIS

1.   Please state the name, address (residence and work), telephone number(s), employer and position or job title of all persons answering these Interrogatories.

   ANSWER:

2.   Please state whether Defendant has been sued under his correct name and in his capacity. If Defendant has not been sued under his correct name and/or in his correct capacity, please state Defendant's correct name and/or capacity so that proper service may be obtained.

   ANSWER:

3.   Please state whether Defendant contends that any conditions precedent to Plaintiffs' recovery have not been met, whether said conditions be stated in the insurance policy or required by law. If so, state what conditions have not been met.

   ANSWER:

4.   Please provide the following dates of communication between Defendant or anyone acting on Defendant's behalf and/or ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY and/or Plaintiffs regarding Plaintiffs' claim made the basis of this lawsuit. If the described communication did not occur, please so state in the answer. Also, identify and/or describe the form of each communication (i.e., written, verbal, electronic, etc.), the name and job title or position of the person receiving the communication and identify any documents or tangible items exchanged on the dates listed and the location of any such documents:

   a) date Defendant received assignment of Plaintiffs' claim;
   b) date Defendant first contacted Plaintiffs about their claim;
   c) date(s) Defendant requested all items, statements and forms that Defendant reasonably believed would be required from Plaintiffs to investigate the claim;
   d) date(s) Defendant made any additional requests for items, statements and forms that Defendant reasonably believed would be required from Plaintiffs to investigate the claim;
   e) date(s) Defendant mailed or hand delivered any estimate(s) to Plaintiffs on their claim; and
   f) date(s) Defendant mailed or hand delivered any payments to Plaintiffs on their claim.

   ANSWER:

5.   If Defendant contends that Plaintiffs did not provide Defendant with requested items, statements or forms that were required in order to properly evaluate Plaintiffs' claim(s), please state what items, statements or forms were requested, the form of each such request (i.e., written, verbal, electronic, etc.), the dates of each request, and what items, statements or forms were received.

ANSWER:

6.   Identify and describe each on-site inspection of Plaintiffs' Property, including the date of each inspection; the identity of each person(s) present at each inspection; how long each inspection lasted; the identity and employer of the person(s) who performed any part of each inspection and what part of the inspection each person performed; specific steps taken during each inspection to inspect Plaintiffs' Property and what damages were found.

ANSWER:

7.   Identify every communication, whether verbal, written or electronic (including emails, instant messages or text messages) exchanged between Defendant and/or ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY or any of its employees, representatives, managers, claim adjusters, claim handlers, claim representatives, independent adjusters, agents and/or Plaintiffs relating to coverage under the Policy and/or Plaintiffs' claim made the basis of this lawsuit. Also, state the current location of any such written or electronic communications.

ANSWER:

8.   Explain all efforts by Defendant, anyone acting on his behalf, or by any other person or entity relied on by Defendant in the adjusting and estimating of residential or homeowners property claims, to investigate, collect, research, compile and/or confirm data regarding the prices of materials and/or labor to repair property damage within Texas, including the Houston, Texas Gulf Coast and Harris County areas , from January 1, 2015 to present.

ANSWER:

9.   State the legal theories and describe the factual bases, for your contention that Defendant fully complied with each of the claims handling requirements codified in Texas Insurance Code §541.060.

ANSWER

10.    State every basis, in fact and in the terms of Plaintiffs' policy, for Defendant's denial and/or recommendation of denial of Plaintiffs' claim(s).

ANSWER:

11.    State the date(s) on which Defendant was licensed as an adjuster in the State of Texas and describe the process Defendant went through to become licensed as an adjuster in the State of Texas.

ANSWER:

12.    State the date(s), including months and years, in which Defendant adjusted and/or investigated claims for property damage, performed inspections for claims for property damage and/or recommended any payment on claims for property damage on policies issued and/or held by Defendant ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY.

ANSWER:

13.    List and identify any and all courses, seminars, education, training, classes or meetings (including any provided online), other experience or reference materials Defendant has attended or received concerning knowledge of Texas Insurance Code Chapter 541, formerly Art. 21.21, *et.seq.* and Texas Insurance Code Chapter 542, formerly Art. 21.55, *et.seq.* Please provide the name, address and telephone number of the entity or individual that sponsored and/or provided the course, seminar, education, training or other experience. This request is limited to the last five (5) years.

ANSWER:

14.    List and identify any and all courses, seminars, education, training, classes or meetings (including any provided online), other experience or reference materials Defendant attended or received regarding the handling, investigation and inspection of hail and/or wind related policy claims and/or hail and/or wind related property damages and property damage claims. Please provide the name, address and telephone number of the entity or individual that sponsored and/or provided the course, seminar, education, training or other experience. This request is limited to the last five (5) years.

ANSWER:

15.   List and identify any and all courses, seminars, education, training, classes or meetings (including any provided online), other experience or reference materials Defendant attended or received concerning residential or commercial construction, including but not limited to roofing, framing, foundation, drywall and/or any other component of construction and/or property repair. Please provide the name, address and telephone number of the entity or individual that sponsored and/or provided the course, seminar, education, training or other experience.   This request is limited to the last five (5) years.

ANSWER:

16.   List and identify any and all experience Defendant has in residential or commercial construction, including but not limited to roofing, framing, foundation, drywall and/or any other component of construction and/or property repair. This request is limited to the last five (5) years.

ANSWER:

17.   State the annual earnings of Defendant for the last five (5) years arising from the adjustment of insurance claims for ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY. Please state any bonus and/or profit-sharing proceeds received in the last five (5) years, and how those bonus and/or profit-sharing proceeds were calculated.

ANSWER:

18.   State whether the Defendant recommended payment on Plaintiffs' claim(s), and if so, in what amount(s).

ANSWER:

19.   State whether Defendant requested or asked for assistance in handling and/or investigating Plaintiffs' claim(s), and if so, describe the request made, to whom each request was made, such as to a supervisor, manager, other defendant(s), engineer, adjuster or any other person(s) and what assistance was given by each such person. Please include the name, address, and telephone number of such person(s) to whom each request was made.

ANSWER:

20.  State the name, address, and telephone number of the office from which Defendant worked and the name, address, and telephone number of Defendant's employer(s), direct supervisor(s) and/or manager(s): a) while handling Plaintiffs' claim(s) and b) for the entire time Defendant worked hail and/or wind claims in the Harris County area during 2015.

ANSWER:


21.  State the cause number, style, and court for each lawsuit filed against Defendant in the last five years alleging misconduct, improper claims handling, bad faith, violations of Texas Insurance Code §541.060, formerly known as Article 21.21, or violations of Texas Insurance Code §542.055 *et seq.*, formerly known as Article 21.55, in the handling of first party claims for property damage coverage under residential or homeowner insurance policies.

ANSWER:


22.  State the name, address, telephone number, and job title or position of all persons who issued, adjusted, investigated, reviewed, handled, made entries, made decisions, or exchanged any documents or communications, including electronic, regarding Plaintiffs' insurance policy or the claim(s) made the basis of this lawsuit, including the name, address, and telephone number of the supervisor(s) and/or manager(s) of the person(s). For any such person who is no longer an employee, agent, or representative of any defendant, please so indicate and provide the person's last known address and telephone number.

ANSWER:


23.  For each investigation by a Texas governmental agency into Defendant's practices when handling first party claims for property damage coverage under residential and/or homeowner and/or commercial policies, state the name of the agency, the names of all investigators, and the names of all government representatives with whom Defendant communicated for purposes of the investigation. This is limited to the last three (3) years.

ANSWER:

**"EXHIBIT C-2"**

CAUSE NO. _____

| | | |
|---|---|---|
| CARLOS DURHAM AND DEBORAH DURHAM, | § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALLSTATE VEHICLE & PROPERTY | § | |
| INSURANCE COMPANY, | § | |
| CHRISTOPHER JANOPOLIS, JOHN | § | |
| BUCKWALTER AND JOSEPH | § | |
| GRIFFITH, | § | |
| *Defendants.* | § | ____ JUDICIAL DISTRICT |

## PLAINTIFF CARLOS DURHAM'S FIRST SET OF INTERROGATORIES TO DEFENDANT JOHN BUCKWALTER

TO:  DEFENDANT JOHN BUCKWALTER, by personal service at his place of residence at 2300 BROADMOOR DRIVE, APT 50, BRYAN, TX 77802-2638.

Pursuant to Rule 197 of the Texas Rules of Civil Procedure, Plaintiffs request that the above-named Defendant, John Buckwalter (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in the following set of interrogatories.

Respectfully submitted,

**LAW OFFICE OF MYNOR E. RODRIGUEZ, P.C.**

/s/ *Mynor "Eddie" Rodriguez*
Mynor "Eddie" Rodriguez
State Bar No. 24037381
1300 McGowen, Suite 280
Houston, TX 77004
(832) 779-1081 (Office)
(832) 553-7420 (Facsimile)
mrodriguez@rodrigueztrialfirm.com

**ATTORNEYS FOR PLAINTIFFS**

## INSTRUCTIONS

1.  For any requested information about a document that no longer exists or cannot be located, identify the document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence or when it could no longer be located, and give the reasons for the disappearance.  Also, identify each person having knowledge about the disposition or loss, and identify each document evidencing the existence or nonexistence of each document that cannot be located.

## DEFINITIONS

The following definitions shall have the following meanings, unless the context of the requests for documents require otherwise:

1. "PLAINTIFFS," means Carlos Durham and Deborah Durham, along with their family members, agents, representatives, and all other persons acting in concert with them, or under their control, whether directly or indirectly, including any attorney.

2. "DEFENDANT," means John Buckwalter, along with his agents, representatives, and all other persons acting in concert with him, or under his control, whether directly or indirectly, including any attorney.

3. "DOCUMENT," "DOCUMENTS" and "DOCUMENTATION" are used in their broadest sense and mean all written, printed, typed, recorded, or graphic matter of every kind and description, source and authorship, both originals and all nonidentical copies thereof, and all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative or private entity or person. Without limiting the foregoing, the terms "document" and "documents" include handwritten, typewritten, printed, photocopied, photographic or recorded, stenographic, computer-generated, computer-installed, or electronically stored matters, however and by whomever produced, prepared, reproduced, disseminated or made, and includes communications in words, symbols, pictures, sound recordings, films, tapes and information stored in, or accessible through, computer of other information storage or retrieval systems, together with the codes and/or programming instruction and other materials necessary to understand and use such systems. For purposes of illustration and no limitation, "documents" includes: accounts; advertising; affidavits; agendas; agreements; analyses; analytical records; announcements; appointment books; appraisals; articles; bills; statements and other records of obligations and expenditures; books; brochures; bulletins; calendars; checks; cancelled checks, vouchers, receipts and other records of payments; charts, drawings; check registers; checkbooks; circulars; collateral files and contents; communications; compilations; confirmations; consultant's reports; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; data compilations from which information can be obtained (including matter used in data processing); deeds of trust; deposit slips, diaries, diary entries; drafts; envelopes; folders or similar containers; expense reports; facsimile transmissions; files; film tape; financial statements; forecasts; graphs; guaranty agreements; instructions, invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; letters of credit; lists; log books; logs, notes or memoranda of telephonic or face-to-face conversations; manuals; maps, marginal notations; memoranda of all kinds to and from any persons, agencies or entities; messages; microfilm; microfiche; minutes; minute books; notes; notebooks; notices; pamphlets; parts lists; papers; photographs, press releases; printed

matter (including published books, articles, speeches and newspaper clippings); printouts; programs; punch cards; purchase orders; receipts; recommendations; records; records of administrative, technical and financial actions taken or recommenced; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; sell orders; sound recordings; specifications; speeches; statement of bank accounts; statements, interviews; statistical data; statistical statements, stock transfer ledger; studies; surveys; tables; tabulations; tape or disk recordings; tape programs; technical and engineering reports, evaluations; advice; recommendations; commentaries; conclusions; studies; test plans; manuals; procedures; data; reports; results and conclusions; summaries, minutes, notes and other records and recording of any conference, meetings, visits, negotiations, statement, interviews or telephone conversations; other summaries; telegrams; teletypes, telexes and other communications sent or received; time records; telephone bills or records; trade letters; transcripts of hearings; transcripts of testimony; UCC instruments; video recordings; visitor records; vouchers; work assignments; work sheets; work papers; and all other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored or electronically stored matter, however or by whomever produced, prepared, reproduced, disseminated or made, the contents of which relate to, discuss, consider or otherwise refer to the subject matter of the particular discovery requested.

4.   "PERSON" includes individuals, associates of individuals, partnerships, joint-stock companies, corporations, or trustee or receiver of an individual, association of individuals, joint-stock company or corporation, and any other type of entity or institution, whether formed for business or any other purposes.

5.   "PARTY" shall mean any party whomsoever to the dispute, and includes each party's agents, employees, attorneys, representatives, predecessors, successors, affiliates, partners, officers, directors, principals and any and all other persons acting or purporting to act on the party's behalf or under the party's control. For purposes of the duty to supplement, the term also includes entities, which become parties subsequent to the date this request for documents is served.

6.   "RELATING TO" and or "RELATES TO" means in whole or in part constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, or dealing with, or in any way pertaining to.

7.   "CONCERNING" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, and constituting.

8.   "COMMUNICATION" means the transmission, sending and/or receipt of information of any kind by or through any means, including but not limited to speech, writings, language machine (foreign or otherwise), computer electronics of any kind (e.g., email), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, "floppy disks", CD-ROM disks, sound, radio or video signals, telecommunication, telephone, teletype, facsimile, telegraph, microfilm, microfiche, photographic film of any type, and

other media of any kind. The term "communication" also includes, without limitations all "records" (as hereafter defined) and all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, and press, publicity or trade releases.

9. "RECORD(S)" means all documents and writings of any kind, and all communications (as defined above) which are stored or retrievable or recorded in any manner, including originals and all non-identical copies whether different from the originals by notation made on such copies or otherwise, all drafts, alterations, modifications, changes and amendments, graphic or any electronic or mechanical records or representation of any kind, created during the period 2000 to present. Any electronic records or computer data which may exist shall be produced in its native file format. Native file format is a file saved in the format as designated by the original application used to create it. Such electronic data should be provided on one of the following media: USB flash drive, CD-ROM or DVD-ROM.

10. "Electronic or magnetic data" means electronic information that is stored in a medium from which it can be retrieved and examined. The term refers to the original (or identical duplicate when the original is not available) and any other copies of the data that may have attached comments, notes, marks, or highlighting of any kind. Electronic or magnetic data includes, but is not limited to, the following: computer programs; operating systems; computer activity logs; programming notes or instructions; e-mail receipts, messages, or transmissions; output resulting from the use of any software program, including word-processing documents, spreadsheets, database files, charts, graphs, and outlines; metadata; TIFF and PDF files; batch files; deleted files; temporary files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; adjuster log(s), ; and any miscellaneous files or file fragments. Electronic or magnetic data includes any items stored on magnetic, optical, digital, or other electronic-storage media, such as hard drives, floppy disks, CD-ROMs, DVDs, tapes, smart cards, integrated-circuit cards (e.g., SIM cards), removable media (e.g., Zip drives, Jaz cartridges, flash drives, removable/portable hard drives and backup drives), microfiche, punched cards. Electronic or magnetic data also includes the file, folder, tabs, containers, and labels attached to or associated with any physical storage device with each original or copy.

11. "DATE" means the exact date, month, and year, if ascertainable, or, if not, the best available approximation.

12. "DESCRIBE" and "IDENTIFY", when referring to a person, require statements of the following:

    a.    The full name.
    b.    The present or last known residential address.
    c.    The present or last known residential and office telephone numbers.
    d.    The present occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular request.

e.    In the case of any person other than an individual, identify the officer, employee, or agent most closely connected with the subject matter of the request and identify the officer who is responsible for supervising that officer or employee.

13.   "DESCRIBE" and "IDENTIFY", when referring to a document, are defined to require that you state the following:

a.    The nature (e.g., letter, handwritten note) of the document

b.    The title or heading that appears on the document

c.    The date of the document and the date of each addendum supplement, or other addition or change.

d.    The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

e.    The present location of the document, and the name, address, position, or title, and telephone number of the person or person having custody of the document.

14.   The words "AND" and "OR" should be construed either conjunctively or disjunctively as required by the context to bring within the scope of these discovery requests any answer, response or document that might be deemed outside its scope by another construction.

15.   "PERTAINS TO" or "PERTAINING TO" means relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, reflects, refutes, disputes, rebuts, controverts or contradicts.

16.   The term "LAWSUIT" means Cause No. _____, *CARLOS DURHAM AND DEBORAH DURHAM VS. ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY, CHRISTOPHER JANOPOLIS, JOHN BUCKWALTER AND JOSEPH GRIFFITH*, In the District Court of Harris County, Texas, ___th Judicial District

17.   "RESIDENCE" and/or "PROPERTY" refers to the property located at 24703 Kennington Way, Spring, TX 77389.

## PLAINTIFF CARLOS DURHAM'S FIRST SET OF INTERROGATORIES TO DEFENDANT JOHN BUCKWALTER

1.  Please state the name, address (residence and work), telephone number(s), employer and position or job title of all persons answering these Interrogatories.

    ANSWER:

2.  Please state whether Defendant has been sued under his correct name and in his capacity. If Defendant has not been sued under his correct name and/or in his correct capacity, please state Defendant's correct name and/or capacity so that proper service may be obtained.

    ANSWER:

3.  Please state whether Defendant contends that any conditions precedent to Plaintiffs' recovery have not been met, whether said conditions be stated in the insurance policy or required by law. If so, state what conditions have not been met.

    ANSWER:

4.  Please provide the following dates of communication between Defendant or anyone acting on Defendant's behalf and/or ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY and/or Plaintiffs regarding Plaintiffs' claim made the basis of this lawsuit. If the described communication did not occur, please so state in the answer. Also, identify and/or describe the form of each communication (i.e., written, verbal, electronic, etc.), the name and job title or position of the person receiving the communication and identify any documents or tangible items exchanged on the dates listed and the location of any such documents:

    a)  date Defendant received assignment of Plaintiffs' claim;
    b)  date Defendant first contacted Plaintiffs about their claim;
    c)  date(s) Defendant requested all items, statements and forms that Defendant reasonably believed would be required from Plaintiffs to investigate the claim;
    d)  date(s) Defendant made any additional requests for items, statements and forms that Defendant reasonably believed would be required from Plaintiffs to investigate the claim;
    e)  date(s) Defendant mailed or hand delivered any estimate(s) to Plaintiffs on their claim; and
    f)  date(s) Defendant mailed or hand delivered any payments to Plaintiffs on their claim.

    ANSWER:

5.   If Defendant contends that Plaintiffs did not provide Defendant with requested items, statements or forms that were required in order to properly evaluate Plaintiffs' claim(s), please state what items, statements or forms were requested, the form of each such request (i.e., written, verbal, electronic, etc.), the dates of each request, and what items, statements or forms were received.

ANSWER:

6.   Identify and describe each on-site inspection of Plaintiffs' Property, including the date of each inspection; the identity of each person(s) present at each inspection; how long each inspection lasted; the identity and employer of the person(s) who performed any part of each inspection and what part of the inspection each person performed; specific steps taken during each inspection to inspect Plaintiffs' Property and what damages were found.

ANSWER:

7.   Identify every communication, whether verbal, written or electronic (including emails, instant messages or text messages) exchanged between Defendant and/or ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY or any of its employees, representatives, managers, claim adjusters, claim handlers, claim representatives, independent adjusters, agents and/or Plaintiffs relating to coverage under the Policy and/or Plaintiffs' claim made the basis of this lawsuit.  Also, state the current location of any such written or electronic communications.

ANSWER:

8.   Explain all efforts by Defendant, anyone acting on his behalf, or by any other person or entity relied on by Defendant in the adjusting and estimating of residential or homeowners property claims, to investigate, collect, research, compile and/or confirm data regarding the prices of materials and/or labor to repair property damage within Texas, including the Houston, Texas Gulf Coast and Harris County areas , from January 1, 2015 to present.

ANSWER:

9.   State the legal theories and describe the factual bases, for your contention that Defendant fully complied with each of the claims handling requirements codified in Texas Insurance Code §541.060.

ANSWER

10.     State every basis, in fact and in the terms of Plaintiffs' policy, for Defendant's denial and/or recommendation of denial of Plaintiffs' claim(s).

      ANSWER:

11.     State the date(s) on which Defendant was licensed as an adjuster in the State of Texas and describe the process Defendant went through to become licensed as an adjuster in the State of Texas.

      ANSWER:

12.     State the date(s), including months and years, in which Defendant adjusted and/or investigated claims for property damage, performed inspections for claims for property damage and/or recommended any payment on claims for property damage on policies issued and/or held by Defendant ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY.

      ANSWER:

13.     List and identify any and all courses, seminars, education, training, classes or meetings (including any provided online), other experience or reference materials Defendant has attended or received concerning knowledge of Texas Insurance Code Chapter 541, formerly Art. 21.21, *et.seq.* and Texas Insurance Code Chapter 542, formerly Art. 21.55, *et.seq.* Please provide the name, address and telephone number of the entity or individual that sponsored and/or provided the course, seminar, education, training or other experience. This request is limited to the last five (5) years.

      ANSWER:

14.     List and identify any and all courses, seminars, education, training, classes or meetings (including any provided online), other experience or reference materials Defendant attended or received regarding the handling, investigation and inspection of hail and/or wind related policy claims and/or hail and/or wind related property damages and property damage claims. Please provide the name, address and telephone number of the entity or individual that sponsored and/or provided the course, seminar, education, training or other experience.  This request is limited to the last five (5) years.

      ANSWER:

15. List and identify any and all courses, seminars, education, training, classes or meetings (including any provided online), other experience or reference materials Defendant attended or received concerning residential or commercial construction, including but not limited to roofing, framing, foundation, drywall and/or any other component of construction and/or property repair. Please provide the name, address and telephone number of the entity or individual that sponsored and/or provided the course, seminar, education, training or other experience. This request is limited to the last five (5) years.

ANSWER:

16. List and identify any and all experience Defendant has in residential or commercial construction, including but not limited to roofing, framing, foundation, drywall and/or any other component of construction and/or property repair. This request is limited to the last five (5) years.

ANSWER:

17. State the annual earnings of Defendant for the last five (5) years arising from the adjustment of insurance claims for ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY. Please state any bonus and/or profit-sharing proceeds received in the last five (5) years, and how those bonus and/or profit-sharing proceeds were calculated.

ANSWER:

18. State whether the Defendant recommended payment on Plaintiffs' claim(s), and if so, in what amount(s).

ANSWER:

19. State whether Defendant requested or asked for assistance in handling and/or investigating Plaintiffs' claim(s), and if so, describe the request made, to whom each request was made, such as to a supervisor, manager, other defendant(s), engineer, adjuster or any other person(s) and what assistance was given by each such person. Please include the name, address, and telephone number of such person(s) to whom each request was made.

ANSWER:

20.    State the name, address, and telephone number of the office from which Defendant worked and the name, address, and telephone number of Defendant's employer(s), direct supervisor(s) and/or manager(s): a) while handling Plaintiffs' claim(s) and b) for the entire time Defendant worked hail and/or wind claims in the Harris County area during 2015.

ANSWER:


21.    State the cause number, style, and court for each lawsuit filed against Defendant in the last five years alleging misconduct, improper claims handling, bad faith, violations of Texas Insurance Code §541.060, formerly known as Article 21.21, or violations of Texas Insurance Code §542.055 *et seq.*, formerly known as Article 21.55, in the handling of first party claims for property damage coverage under residential or homeowner insurance policies.

ANSWER:


22.    State the name, address, telephone number, and job title or position of all persons who issued, adjusted, investigated, reviewed, handled, made entries, made decisions, or exchanged any documents or communications, including electronic, regarding Plaintiffs' insurance policy or the claim(s) made the basis of this lawsuit, including the name, address, and telephone number of the supervisor(s) and/or manager(s) of the person(s). For any such person who is no longer an employee, agent, or representative of any defendant, please so indicate and provide the person's last known address and telephone number.

ANSWER:


23.    For each investigation by a Texas governmental agency into Defendant's practices when handling first party claims for property damage coverage under residential and/or homeowner and/or commercial policies, state the name of the agency, the names of all investigators, and the names of all government representatives with whom Defendant communicated for purposes of the investigation. This is limited to the last three (3) years.

ANSWER:

**"EXHIBIT C-3"**

## CAUSE NO. _____

| | | |
|---|---|---|
| **CARLOS DURHAM AND DEBORAH DURHAM,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **ALLSTATE VEHICLE & PROPERTY** | § | |
| **INSURANCE COMPANY,** | § | |
| **CHRISTOPHER JANOPOLIS, JOHN** | § | |
| **BUCKWALTER AND JOSEPH** | § | |
| **GRIFFITH,** | § | |
| *Defendants.* | § | **\_\_\_\_ JUDICIAL DISTRICT** |

### PLAINTIFF CARLOS DURHAM'S FIRST SET OF INTERROGATORIES TO DEFENDANT JOSEPH GRIFFITH

TO:    DEFENDANT JOHN BUCKWALTER, by personal service at his place of residence at 720 SPRING LAKE DRIVE, DESTIN FL 32541-1967.

      Pursuant to Rule 197 of the Texas Rules of Civil Procedure, Plaintiffs request that the above-named Defendant, Joseph Griffith (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in the following set of interrogatories.

                                 Respectfully submitted,

                                 **LAW OFFICE OF MYNOR E. RODRIGUEZ, P.C.**

                                 */s/ Mynor "Eddie" Rodriguez*
                                 Mynor "Eddie" Rodriguez
                                 State Bar No. 24037381
                                 1300 McGowen, Suite 280
                                 Houston, TX 77004
                                 (832) 779-1081 (Office)
                                 (832) 553-7420 (Facsimile)
                                 mrodriguez@rodrigueztrialfirm.com

                                 **ATTORNEYS FOR PLAINTIFFS**

**INSTRUCTIONS**

1.    For any requested information about a document that no longer exists or cannot be located, identify the document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence or when it could no longer be located, and give the reasons for the disappearance.  Also, identify each person having knowledge about the disposition or loss, and identify each document evidencing the existence or nonexistence of each document that cannot be located.

## DEFINITIONS

The following definitions shall have the following meanings, unless the context of the requests for documents require otherwise:

1.  "PLAINTIFFS," means Carlos Durham and Deborah Durham, along with their family members, agents, representatives, and all other persons acting in concert with them, or under their control, whether directly or indirectly, including any attorney.

2.  "DEFENDANT," means Joseph Griffith, along with his agents, representatives, and all other persons acting in concert with him, or under his control, whether directly or indirectly, including any attorney.

3.  "DOCUMENT," "DOCUMENTS" and "DOCUMENTATION" are used in their broadest sense and mean all written, printed, typed, recorded, or graphic matter of every kind and description, source and authorship, both originals and all nonidentical copies thereof, and all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative or private entity or person. Without limiting the foregoing, the terms "document" and "documents" include handwritten, typewritten, printed, photocopied, photographic or recorded, stenographic, computer-generated, computer-installed, or electronically stored matters, however and by whomever produced, prepared, reproduced, disseminated or made, and includes communications in words, symbols, pictures, sound recordings, films, tapes and information stored in, or accessible through, computer of other information storage or retrieval systems, together with the codes and/or programming instruction and other materials necessary to understand and use such systems.  For purposes of illustration and no limitation, "documents" includes: accounts; advertising; affidavits; agendas; agreements; analyses; analytical records; announcements; appointment books; appraisals; articles; bills; statements and other records of obligations and expenditures; books; brochures; bulletins; calendars; checks; cancelled checks, vouchers, receipts and other records of payments; charts, drawings; check registers; checkbooks; circulars; collateral files and contents; communications; compilations; confirmations; consultant's reports; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; data compilations from which information can be obtained (including matter used in data processing); deeds of trust; deposit slips, diaries, diary entries; drafts; envelopes; folders or similar containers; expense reports; facsimile transmissions; files; film tape; financial statements; forecasts; graphs; guaranty agreements; instructions, invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; letters of credit; lists; log books; logs, notes or memoranda of telephonic or face-to-face conversations; manuals; maps, marginal notations; memoranda of all kinds to and from any persons, agencies or entities; messages; microfilm; microfiche; minutes; minute books; notes; notebooks; notices; pamphlets; parts lists; papers; photographs, press releases; printed

matter (including published books, articles, speeches and newspaper clippings); printouts; programs; punch cards; purchase orders; receipts; recommendations; records; records of administrative, technical and financial actions taken or recommenced; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; sell orders; sound recordings; specifications; speeches; statement of bank accounts; statements, interviews; statistical data; statistical statements, stock transfer ledger; studies; surveys; tables; tabulations; tape or disk recordings; tape programs; technical and engineering reports, evaluations; advice; recommendations; commentaries; conclusions; studies; test plans; manuals; procedures; data; reports; results and conclusions; summaries, minutes, notes and other records and recording of any conference, meetings, visits, negotiations, statement, interviews or telephone conversations; other summaries; telegrams; teletypes, telexes and other communications sent or received; time records; telephone bills or records; trade letters; transcripts of hearings; transcripts of testimony; UCC instruments; video recordings; visitor records; vouchers; work assignments; work sheets; work papers; and all other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored or electronically stored matter, however or by whomever produced, prepared, reproduced, disseminated or made, the contents of which relate to, discuss, consider or otherwise refer to the subject matter of the particular discovery requested.

4.    "PERSON" includes individuals, associates of individuals, partnerships, joint-stock companies, corporations, or trustee or receiver of an individual, association of individuals, joint-stock company or corporation, and any other type of entity or institution, whether formed for business or any other purposes.

5.    "PARTY" shall mean any party whomsoever to the dispute, and includes each party's agents, employees, attorneys, representatives, predecessors, successors, affiliates, partners, officers, directors, principals and any and all other persons acting or purporting to act on the party's behalf or under the party's control. For purposes of the duty to supplement, the term also includes entities, which become parties subsequent to the date this request for documents is served.

6.    "RELATING TO" and or "RELATES TO" means in whole or in part constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, or dealing with, or in any way pertaining to.

7.    "CONCERNING" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, and constituting.

8.    "COMMUNICATION" means the transmission, sending and/or receipt of information of any kind by or through any means, including but not limited to speech, writings, language machine (foreign or otherwise), computer electronics of any kind (e.g., email), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, "floppy disks", CD-ROM disks, sound, radio or video signals, telecommunication, telephone, teletype, facsimile, telegraph, microfilm, microfiche, photographic film of any type, and

other media of any kind. The term "communication" also includes, without limitations all "records" (as hereafter defined) and all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, and press, publicity or trade releases.

9. "RECORD(S)" means all documents and writings of any kind, and all communications (as defined above) which are stored or retrievable or recorded in any manner, including originals and all non-identical copies whether different from the originals by notation made on such copies or otherwise, all drafts, alterations, modifications, changes and amendments, graphic or any electronic or mechanical records or representation of any kind, created during the period 2000 to present. Any electronic records or computer data which may exist shall be produced in its native file format. Native file format is a file saved in the format as designated by the original application used to create it. Such electronic data should be provided on one of the following media: USB flash drive, CD-ROM or DVD-ROM.

10. "Electronic or magnetic data" means electronic information that is stored in a medium from which it can be retrieved and examined. The term refers to the original (or identical duplicate when the original is not available) and any other copies of the data that may have attached comments, notes, marks, or highlighting of any kind. Electronic or magnetic data includes, but is not limited to, the following: computer programs; operating systems; computer activity logs; programming notes or instructions; e-mail receipts, messages, or transmissions; output resulting from the use of any software program, including word-processing documents, spreadsheets, database files, charts, graphs, and outlines; metadata; TIFF and PDF files; batch files; deleted files; temporary files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; adjuster log(s), ; and any miscellaneous files or file fragments. Electronic or magnetic data includes any items stored on magnetic, optical, digital, or other electronic-storage media, such as hard drives, floppy disks, CD-ROMs, DVDs, tapes, smart cards, integrated-circuit cards (e.g., SIM cards), removable media (e.g., Zip drives, Jaz cartridges, flash drives, removable/portable hard drives and backup drives), microfiche, punched cards. Electronic or magnetic data also includes the file, folder, tabs, containers, and labels attached to or associated with any physical storage device with each original or copy.

11. "DATE" means the exact date, month, and year, if ascertainable, or, if not, the best available approximation.

12. "DESCRIBE" and "IDENTIFY", when referring to a person, require statements of the following:

   a.   The full name.
   b.   The present or last known residential address.
   c.   The present or last known residential and office telephone numbers.
   d.   The present occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular request.

e.   In the case of any person other than an individual, identify the officer, employee, or agent most closely connected with the subject matter of the request and identify the officer who is responsible for supervising that officer or employee.

13.   "DESCRIBE" and "IDENTIFY", when referring to a document, are defined to require that you state the following:

a.   The nature (e.g., letter, handwritten note) of the document

b.   The title or heading that appears on the document

c.   The date of the document and the date of each addendum supplement, or other addition or change.

d.   The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

e.   The present location of the document, and the name, address, position, or title, and telephone number of the person or person having custody of the document.

14.   The words "AND" and "OR" should be construed either conjunctively or disjunctively as required by the context to bring within the scope of these discovery requests any answer, response or document that might be deemed outside its scope by another construction.

15.   "PERTAINS TO" or "PERTAINING TO" means relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, reflects, refutes, disputes, rebuts, controverts or contradicts.

16.   The term "LAWSUIT" means Cause No. _____, *CARLOS DURHAM AND DEBORAH DURHAM VS. ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY, CHRISTOPHER JANOPOLIS, JOHN BUCKWALTER AND JOSEPH GRIFFITH,* In the District Court of Harris County, Texas, ___th Judicial District

17.   "RESIDENCE" and/or "PROPERTY" refers to the property located at 24703 Kennington Way, Spring, TX 77389.

## PLAINTIFF CARLOS DURHAM'S FIRST SET OF INTERROGATORIES TO DEFENDANT JOSEPH GRIFFITH

1.    Please state the name, address (residence and work), telephone number(s), employer and position or job title of all persons answering these Interrogatories.

      ANSWER:


2.    Please state whether Defendant has been sued under his correct name and in his capacity. If Defendant has not been sued under his correct name and/or in his correct capacity, please state Defendant's correct name and/or capacity so that proper service may be obtained.

      ANSWER:


3.    Please state whether Defendant contends that any conditions precedent to Plaintiffs' recovery have not been met, whether said conditions be stated in the insurance policy or required by law.  If so, state what conditions have not been met.

      ANSWER:


4.    Please provide the following dates of communication between Defendant or anyone acting on Defendant's behalf and/or ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY and/or Plaintiffs regarding Plaintiffs' claim made the basis of this lawsuit.  If the described communication did not occur, please so state in the answer. Also, identify and/or describe the form of each communication (i.e., written, verbal, electronic, etc.), the name and job title or position of the person receiving the communication and identify any documents or tangible items exchanged on the dates listed and the location of any such documents:

      a)  date Defendant received assignment of Plaintiffs' claim;
      b)  date Defendant first contacted Plaintiffs about their claim;
      c)  date(s) Defendant requested all items, statements and forms that Defendant reasonably believed would be required from Plaintiffs to investigate the claim;
      d)  date(s) Defendant made any additional requests for items, statements and forms that Defendant reasonably believed would be required from Plaintiffs to investigate the claim;
      e)  date(s) Defendant mailed or hand delivered any estimate(s) to Plaintiffs on their claim; and
      f)  date(s) Defendant mailed or hand delivered any payments to Plaintiffs on their claim.

      ANSWER:

5.      If Defendant contends that Plaintiffs did not provide Defendant with requested items, statements or forms that were required in order to properly evaluate Plaintiffs' claim(s), please state what items, statements or forms were requested, the form of each such request (i.e., written, verbal, electronic, etc.), the dates of each request, and what items, statements or forms were received.

        ANSWER:

6.      Identify and describe each on-site inspection of Plaintiffs' Property, including the date of each inspection; the identity of each person(s) present at each inspection; how long each inspection lasted; the identity and employer of the person(s) who performed any part of each inspection and what part of the inspection each person performed; specific steps taken during each inspection to inspect Plaintiffs' Property and what damages were found.

        ANSWER:

7.      Identify every communication, whether verbal, written or electronic (including emails, instant messages or text messages) exchanged between Defendant and/or ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY or any of its employees, representatives, managers, claim adjusters, claim handlers, claim representatives, independent adjusters, agents and/or Plaintiffs relating to coverage under the Policy and/or Plaintiffs' claim made the basis of this lawsuit. Also, state the current location of any such written or electronic communications.

        ANSWER:

8.      Explain all efforts by Defendant, anyone acting on his behalf, or by any other person or entity relied on by Defendant in the adjusting and estimating of residential or homeowners property claims, to investigate, collect, research, compile and/or confirm data regarding the prices of materials and/or labor to repair property damage within Texas, including the Houston, Texas Gulf Coast and Harris County areas , from January 1, 2015 to present.

        ANSWER:

9.      State the legal theories and describe the factual bases, for your contention that Defendant fully complied with each of the claims handling requirements codified in Texas Insurance Code §541.060.

        ANSWER

10.    State every basis, in fact and in the terms of Plaintiffs' policy, for Defendant's denial and/or recommendation of denial of Plaintiffs' claim(s).

ANSWER:

11.    State the date(s) on which Defendant was licensed as an adjuster in the State of Texas and describe the process Defendant went through to become licensed as an adjuster in the State of Texas.

ANSWER:

12.    State the date(s), including months and years, in which Defendant adjusted and/or investigated claims for property damage, performed inspections for claims for property damage and/or recommended any payment on claims for property damage on policies issued and/or held by Defendant ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY.

ANSWER:

13.    List and identify any and all courses, seminars, education, training, classes or meetings (including any provided online), other experience or reference materials Defendant has attended or received concerning knowledge of Texas Insurance Code Chapter 541, formerly Art. 21.21, *et.seq.* and Texas Insurance Code Chapter 542, formerly Art. 21.55, *et.seq.* Please provide the name, address and telephone number of the entity or individual that sponsored and/or provided the course, seminar, education, training or other experience. This request is limited to the last five (5) years.

ANSWER:

14.    List and identify any and all courses, seminars, education, training, classes or meetings (including any provided online), other experience or reference materials Defendant attended or received regarding the handling, investigation and inspection of hail and/or wind related policy claims and/or hail and/or wind related property damages and property damage claims. Please provide the name, address and telephone number of the entity or individual that sponsored and/or provided the course, seminar, education, training or other experience. This request is limited to the last five (5) years.

ANSWER:

15. List and identify any and all courses, seminars, education, training, classes or meetings (including any provided online), other experience or reference materials Defendant attended or received concerning residential or commercial construction, including but not limited to roofing, framing, foundation, drywall and/or any other component of construction and/or property repair. Please provide the name, address and telephone number of the entity or individual that sponsored and/or provided the course, seminar, education, training or other experience. This request is limited to the last five (5) years.

    ANSWER:

16. List and identify any and all experience Defendant has in residential or commercial construction, including but not limited to roofing, framing, foundation, drywall and/or any other component of construction and/or property repair. This request is limited to the last five (5) years.

    ANSWER:

17. State the annual earnings of Defendant for the last five (5) years arising from the adjustment of insurance claims for ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY. Please state any bonus and/or profit-sharing proceeds received in the last five (5) years, and how those bonus and/or profit-sharing proceeds were calculated.

    ANSWER:

18. State whether the Defendant recommended payment on Plaintiffs' claim(s), and if so, in what amount(s).

    ANSWER:

19. State whether Defendant requested or asked for assistance in handling and/or investigating Plaintiffs' claim(s), and if so, describe the request made, to whom each request was made, such as to a supervisor, manager, other defendant(s), engineer, adjuster or any other person(s) and what assistance was given by each such person. Please include the name, address, and telephone number of such person(s) to whom each request was made.

    ANSWER:

20. State the name, address, and telephone number of the office from which Defendant worked and the name, address, and telephone number of Defendant's employer(s), direct supervisor(s) and/or manager(s): a) while handling Plaintiffs' claim(s) and b) for the entire time Defendant worked hail and/or wind claims in the Harris County area during 2015.

    ANSWER:

21. State the cause number, style, and court for each lawsuit filed against Defendant in the last five years alleging misconduct, improper claims handling, bad faith, violations of Texas Insurance Code §541.060, formerly known as Article 21.21, or violations of Texas Insurance Code §542.055 *et seq.*, formerly known as Article 21.55, in the handling of first party claims for property damage coverage under residential or homeowner insurance policies.

    ANSWER:

22. State the name, address, telephone number, and job title or position of all persons who issued, adjusted, investigated, reviewed, handled, made entries, made decisions, or exchanged any documents or communications, including electronic, regarding Plaintiffs' insurance policy or the claim(s) made the basis of this lawsuit, including the name, address, and telephone number of the supervisor(s) and/or manager(s) of the person(s). For any such person who is no longer an employee, agent, or representative of any defendant, please so indicate and provide the person's last known address and telephone number.

    ANSWER:

23. For each investigation by a Texas governmental agency into Defendant's practices when handling first party claims for property damage coverage under residential and/or homeowner and/or commercial policies, state the name of the agency, the names of all investigators, and the names of all government representatives with whom Defendant communicated for purposes of the investigation. This is limited to the last three (3) years.

    ANSWER: